United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 13, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-30654

_____


MILTON B. WITTY, III,

                                        Plaintiff-Appellee,

                    versus

DELTA AIR LINES, INC.,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court for
the Western District of Louisiana
_____

Before REAVLEY, DAVIS and DeMOSS, Circuit Judges.

REAVLEY, Circuit Judge:

    In this appeal we hold that this passenger's state tort claims against an airline are

preempted, and we render judgment for the airline.

### BACKGROUND

    Milton Witty brought this diversity suit in Louisiana federal district court against

Delta Air Lines, Inc. (Delta).  He claims that he developed Deep Vein Thrombosis (DVT)

while on a Delta flight from Monroe, Louisiana to Hartford, Connecticut.

DVT occurs when a blood clot develops in a deep vein, usually in the leg. It can cause serious complications if the clot breaks off and travels to the lungs or brain. Witty alleged that Delta was negligent in failing to warn passengers about the risks of DVT. He asserts in his appellate brief that "[t]he warning should be that there is a high risk of developing [DVT] in pressurized cabins that exceed a certain length of time." The complaint also alleged that Delta was negligent in failing to provide adequate leg room to prevent DVT and in "failing to allow [passengers] to exercise their legs."

Delta filed a motion to dismiss, arguing that the state law claims were preempted. The district court denied the motion. The court reasoned that under Hodges v. Delta Airlines, Inc., 44 F.3d 334 (5th Cir. 1995) (en banc), state regulation of airline "services" is preempted but that "state tort actions for personal physical injuries caused by the operation and maintenance of aircraft are not preempted by federal law." Dist. ct. ruling at 3. The court concluded that Witty's claim arose from the operation of Delta's aircraft and therefore was not preempted.

The district court found that the order was appropriate for interlocutory appeal under 28 U.S.C. § 1292(b), and we permitted the appeal.

## DISCUSSION

We review de novo the district court's ruling on preemption. Baker v. Farmers Elec. Coop., Inc., 34 F.3d 274, 278 (5th 1994).

Sitting en banc in Hodges, we held that a passenger's personal injury claim under state law was not preempted. The passenger "was injured when a fellow passenger

2

opened an overhead compartment and dislodged a case containing several bottles of rum." 44 F.3d at 335. We analyzed the effect of the preemption provision of Airline Deregulation Act of 1978 (ADA), which states that, subject to certain exceptions not relevant here, "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route or service of any air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1) (previously codified at 49 U.S.C. app. § 1305(a)(1)).[1]

In Hodges, we held that the preemptive effect of § 41713(b)(1) is limited by a provision of the Federal Aviation Act of 1958 (FAA), 49 U.S.C. § 41112(a) (previously codified at 49 U.S.C. app. § 1371(q)),[2] which provides that air carriers must maintain insurance or self-insurance that covers liability "for bodily injury to, or death of, an individual . . . resulting from the operation or maintenance of the aircraft . . . ." We reasoned that § 41112(a) "can only be understood to qualify the scope of 'services' removed from state regulation by [§ 41713(b)(1)]. A complete preemption of state law in this area would have rendered any requirement of insurance coverage nugatory." Hodges, 44 F.3d at 338. "Thus, federal preemption of state laws, even certain common

---

[1] The language of this provision was changed when it was recodified, and it previously referred to "rates" rather than "a price." These changes however are not substantive and do not affect our analysis. See Hodges, 44 F.3d at 340 n.1 (Jolly, J., concurring) (noting that recodification of Title 49 was without substantive change).

[2] Again, the language of this provision was altered when it was recodified, but we do not consider the changes substantive.

3

law actions 'related to services' of an air carrier, does not displace state tort actions for personal physical injuries or property damage caused by the operation and maintenance of aircraft." Id. at 336.

We recognized in Hodges that there is no "strict dichotomy" between "services" and "operation or maintenance of aircraft," concluding instead that the terms "overlap somewhat conceptually," and thereby suggesting a case by case resolution of preemption questions. See id. at 339. We ultimately concluded that the state personal injury claim was not related to the provision of airline services and did "derive from the operation of the aircraft," and accordingly was not preempted. Id. at 340.

Merely describing our analysis in Hodges demonstrates that preemption questions in this arena do not always submit to a simple analysis. Insofar as plaintiff Witty in the pending case alleges that Delta should have provided more leg room, we hold that such a requirement would inexorably relate to prices charged by airlines, and Witty does not seriously contend otherwise. Since requiring more leg room would necessarily reduce the number of seats on the aircraft, such a requirement would impose a standard "relating to a price" under § 41713(b)(1), and is accordingly preempted by the ADA. Section 41713(b)(1) not only preempts the direct regulation of prices by states, but also preempts indirect regulation "relating to" prices that have "the forbidden significant effect" on such prices. Morales v. Trans World Airlines, Inc., 504 U.S. 374, 385, 388 (1992). While the state regulation of leg room might not relate to prices as obviously as the state regulation of fare advertising at issue in Morales, the economic effect on prices would in our view

4

be significant, perhaps much more so than the advertising rules at issue in Morales. See Hodges, 44 F.3d at 339 ("Morales relied in part on the fact that the state restrictions on airfare advertising had a significant economic effect on fares.").

The failure to warn claim[3] presents a closer question, but we conclude under implied preemption doctrines that Congress intended to preempt state standards for the warnings that must be given airline passengers.

At the outset, we note that Hodges described the ADA as "an economic deregulation statute," id. at 335, suggesting that the express preemption provision of that Act is not necessarily the only conceivable basis for finding preemption in a personal injury case based on inadequate safety warnings. There is a separate federal act, the FAA, which addresses air safety. The Supreme Court, after Hodges, has recognized that preemption under ordinary implied preemption principles is not necessarily foreclosed by the existence of an express preemption provision. Greir v. Am. Honda Motor Co., 529 U.S. 861, 869 (2000).[4] Moreover, Hodges expressly did not reach the issue of "the

---

[3] The complaint, by alleging that Delta was negligent in "failing to allow [passengers] to exercise their legs," might be construed as asserting a separate "failure to instruct" claim that passengers were not advised to move about the cabin or were instructed verbally or by the seat belt sign to remain in their seats. We conclude however that the preemption analysis of such a claim is essentially identical to the analysis of a failure to warn claim, and our discussion of the latter is intended to cover both claims.

[4] Significantly, Greir also held that a statutory saving clause, preserving common law remedies, "does not bar the ordinary working of conflict pre-emption principles." Id. (emphasis in original). Hence, a similar saving clause in the FAA, 49 U.S.C. § 40120(c), providing that "[a] remedy under this part is in addition to any other remedies provided by law," does not foreclose us from concluding that state claims are preempted under

5

possible preemptive effect of Federal Aviation Administration safety regulations governing aircraft and carriers." Hodges, 44 F.3d at 339 n.12.[5] This issue is squarely raised in the pending case.

Preemption ultimately turns on congressional intent. Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992). Preemption may be express or implied. Morales, 504 U.S. at 383. Under the implied preemption doctrines of field preemption and conflict preemption, a state claim is preempted where "Congressional intent to preempt is inferred from the existence of a pervasive regulatory scheme" or where "state law conflicts with federal law or interferes with the achievement of federal objectives." Hodges, 44 F.3d at 335 n.1. In the pending case, field preemption and conflict preemption are both applicable, because there exists a comprehensive scheme of federal regulation, and the imposition of state standards would conflict with federal law and interfere with federal objectives.

The FAA not only authorizes but affirmatively directs the Administrator of the Federal Aviation Administration to promulgate air safety standards and regulations, including standards and regulations relating to aircraft design, aircraft maintenance and inspections, "the maximum hours or periods of service of airmen and other employees of air carriers," and as a catchall provision, "other practices, methods, and procedure the

_____

recognized implied preemption principles.

[5] Smith, likewise, did not reach this issue. Smith, 44 F.3d at 347 n.2.

6

Administrator finds necessary for safety in air commerce and national security." 49 U.S.C. § 44701(a). The administrator is generally charged with carrying out the FAA "in a way that best tends to reduce or eliminate the possibility or recurrence of accidents in air transportation." Id. § 44701(c).

Pursuant to its congressional charge to regulate air safety, the Federal Aviation Administration has issued a broad array of safety-related regulations codified in Title 14 of the Code of Federal Regulations. These regulations cover airworthiness standards, crew certification and medical standards, and aircraft operating requirements. The regulations include a general federal standard of care for aircraft operators, requiring that "[n]o person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another." 14 C.F.R. § 91.13(a) (2003).

There are a number of federal regulations governing the warnings and instructions which must be given to airline passengers. These regulations require, for example, that "no smoking" placards be placed in lavatories, id. § 25.791(d) (2004), that "no smoking" signs be illuminated during the entire flight on non-smoking flights, id. § 121.317(c) (2003), and that the "fasten seat belt" sign "shall be turned on during any movement on the surface, for each takeoff, for each landing, and at any other time considered necessary by the pilot in command," id. § 121.317(b). In addition, the Federal Aviation Administration has published regulations, id. §§ 121.571 & 121.585, and an advisory

7

circular[6] setting out in detail the oral briefings, familiar to all domestic air travelers, which flight attendants or other flight personnel must give passengers, as well the information that must be included in passenger safety briefing cards.

We hold that federal regulatory requirements for passenger safety warnings and instructions are exclusive and preempt all state standards and requirements. Congress enacted a pervasive regulatory scheme covering air safety concerns that includes regulation of the warnings and instructions that must be given airline passengers. The Supreme Court has observed that the FAA "requires a delicate balance between safety and efficiency, and the protection of persons on the ground. . . . The interdependence of these factors requires a uniform and exclusive system of federal regulation if the congressional objectives underlying the Federal Aviation Act are to be fulfilled." City of Burbank v. Lockheed Air Teminal Inc., 411 U.S. 624, 638-39 (1973) (citations omitted).

Allowing courts and juries to decide under state law that warnings should be given in addition to those required by the Federal Aviation Administration would necessarily conflict with the federal regulations. In this case, the conflict is more than theoretical, since Witty claims that a DVT warning should have been given, while federal regulations do not require such a warning. And any warning that passengers should not stay in their seats, but should instead move about to prevent DVT, would necessarily conflict with any federal determination that, all things considered, passengers are safer in their seats. We

---

[6] Federal Aviation Administration Advisory Circular 121-24B – Passenger Safety Information Briefing and Briefing Cards (Feb. 1, 1999).

note that, due to turbulence concerns, the Federal Aviation Administration recommends on its Internet site[7] that passengers wear their seat belts at all times. The site states that from 1981 through 1997 there were 342 reports of turbulence affecting major air carriers, resulting in three deaths, 80 serious injuries, and 769 minor injuries, and that "turbulence is not always predictable."

Moreover, warnings by their nature conflict, in the sense that the import of one warning is diluted by additional warnings that might be imposed under state law. Cf. Morales, 504 U.S. at 390 ("As the FTC observed, '[r]equiring too much information in advertisements can have the paradoxical effect of stifling the information that consumers receive.'") (citation omitted). The advisory circular described above warns that "[p]assenger safety briefing cards should contain only information that is essential for safety."

Ultimately, we need not decide whether a state claim for failure to warn passengers of air travel risks is entirely preempted, or, as another circuit has held, is preempted to the extent that a federal standard must be used but that state remedies are available.[8] We hold that, at a minimum, any such claim must be based on a violation of federally mandated warnings. In this case, federal regulations do not require warnings to

_____

[7] http://www.faa.gov/Passengers/turbulence/cfm.

[8] See Abdullah v. American Airlines, Inc., 181 F.3d 363, 376 (3d Cir. 1999) (holding that state aviation safety standards are preempted but that state remedies are available for injuries resulting from violations of federal standards). The plaintiff's claims in Abdullah included a failure to warn claim. Id. at 365.

9

passengers about the risks of DVT or methods for preventing this condition.  Delta

therefore cannot be held liable for failing to provide warnings or instructions to Witty.

Finally, we note our intent to decide this case narrowly by addressing the precise

issues before us.  See City of Burbank, 411 U.S. at 638 ("Our prior cases on pre-emption

are not precise guidelines in the present controversy, for each case turns on the

peculiarities and special features of the federal regulatory scheme in question.").  We do

not, for example, express an opinion as to whether emergency or unplanned situations on

flights can form the basis of a state failure to warn claim that is not preempted.

CONCLUSION

We hold that the leg room claim is preempted by the ADA.  We further hold that

federal law exclusively provides the safety warnings that airlines must give passengers,

and that state law regarding air safety warnings is preempted.  Since there is no federal

requirement that airlines give DVT warnings, Witty's state claim for failure to warn fails.

Accordingly, the order denying the motion to dismiss is reversed, and we render

judgment in favor of Delta.

REVERSED and RENDERED.