Jerome J. MIEZIN and Patricia Miezin,
Plaintiffs-Appellants,†

v.

MIDWEST EXPRESS AIRLINES, INC.,
Defendant-Respondent,

ABC INSURANCE COMPANY, Defendant.

Court of Appeals

*No. 2004AP868. Submitted on briefs March 1, 2005.
—Decided May 17, 2005.*

2005 WI App 120

(Also reported in 701 N.W.2d 626.)

---

† Petition to review denied 8-25-05.

On behalf of the plaintiffs-appellants, the cause was submitted on the brief of *James P. Brennan* of *Brennan & Collins* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Eric J. Van Vugt* and *Joshua B. Fleming* of *Quarles & Brady LLP* of Milwaukee and *Clem C. Trischler* of *Pietragallo, Bosick & Gordon* of Pittsburgh, Pennsylvania.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. KESSLER, J.   At issue in this case is whether a plaintiff can pursue a state common-law negligence claim alleging that an airline negligently failed to warn passengers about the dangers of deep vein thrombosis ("DVT"), or whether such claims are preempted by federal law. Jerome J. Miezin and Patricia Miezin (collectively, "Miezin") appeal from a judgment dismissing their state common-law negligence and loss of consortium claims, respectively, against Midwest Express Air-

lines, Inc., ("Midwest"). Miezin argues the trial court erroneously granted summary judgment in Midwest's favor after concluding that Miezin's state common-law negligence claim is preempted by federal law and, in the alternative, that Midwest had no duty under Wisconsin common law to warn airline passengers about the dangers of DVT.

¶ 2. We affirm the judgment because we conclude that Miezin's claim, based solely on a state common-law negligence theory,[1] is impliedly preempted by the Federal Aviation Act of 1958, 49 U.S.C. § 40101, *et seq.* (previously codified at 49 U.S.C. App. § 1301, *et seq.*) ("Federal Aviation Act"). Because we affirm on that ground, we do not consider whether Miezin's claim is also expressly preempted by the preemption provision of the Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b)(1) (previously codified at 49 U.S.C. App. § 1305(a)(1)),[2] or whether, in the absence of preemp-

---

[1] Miezin has not alleged that the airline violated a federal standard of care, and we therefore do not address whether he could bring a state law action alleging breach of a federal standard of care. *See* ¶ 19 of this opinion.

[2] The express preemption provision of the Airline Deregulation Act of 1978 provides:

> Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

*See* 49 U.S.C. § 41713(b)(1). Miezin cites several cases that addressed whether specific incidents that occurred on airplanes were "services" under the Airline Deregulation Act. Because we decide this case based on implied preemption, we do not address whether the Airline Deregulation Act might also expressly preempt Miezin's claims.

tion, Wisconsin common law would impose on airlines a duty to warn their passengers about the dangers of DVT. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (cases should be decided on the "narrowest possible ground"). Finally, because Miezin does not argue there is any independent basis upon which Patricia's claim for loss of consortium would survive once the state common-law negligence claim is dismissed, we affirm, without discussion, the dismissal of Patricia's claim.

## BACKGROUND

¶ 3.  The background facts that formed the basis of Miezin's personal injury claim are largely undisputed. Jerome Miezin traveled on a Midwest flight from Milwaukee to Boston on October 15, 1999, and returned on October 23. Both flights were less than three hours long.

¶ 4.  After his return to Milwaukee, Miezin experienced pain in his leg. On October 27, Miezin was diagnosed with DVT, a clotting condition that develops in the deep veins of the lower extremities. Doctors also determined that Miezin has a "Factor V Leiden" genetic condition which predisposes him to blood clots.[3] It is undisputed that Miezin did not know he had this genetic condition until he was diagnosed with DVT, which occurred after he completed the flights.

¶ 5.  Miezin filed this action, alleging that he has suffered permanent disability and disfigurement as a result of DVT, which he claimed he developed because Midwest negligently failed to advise Miezin that:

---

[3] According to one of Miezin's experts, Factor V Leiden is present in four to six percent of the general population.

before and during the flights from Milwaukee to Boston and Boston to Milwaukee he should get up out of his seat and move around the cabin of the aircraft and exercise his toes and feet and lower legs and upper legs to promote circulation in those body parts and in failing to advise him to drink liquids and wear loose clothing and avoid stockings or socks with tight elastic below the knees and in failing to advise him to get up and walk about at least once an hour and failing to advise him to massage his toes, feet, ankles, lower legs and knees and exercise his calf muscles to stimulate blood circulation and in failing to advise him to exercise during his flights to promote circulation and ... was otherwise negligent in failing to provide proper conditions and atmosphere for [Miezen].

In other words, as Miezen explains in his brief, he alleged that Midwest failed to inform passengers about the dangers of DVT arising from airline travel.

¶ 6. Midwest moved for summary judgment. The trial court granted the motion, concluding that Miezin's state common-law negligence claim is preempted by the Federal Aviation Act and, in the alternative, that Midwest had no duty under Wisconsin common law to warn airline passengers about the dangers of DVT. This appeal followed.

## STANDARD OF REVIEW

¶ 7. We review summary judgment *de novo,* applying the same method as the trial court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). Summary judgment is appropriate when there is no material factual dispute and the moving party is entitled to judgment as a matter of law. *Germanotta v. National Indem. Co.,* 119 Wis. 2d 293,

296, 349 N.W.2d 733 (Ct. App. 1984). Summary judgment methodology is well established and need not be repeated here. *See, e.g., Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751.

## DISCUSSION

¶ 8.   Miezin argues that his state common-law negligence claim is not preempted by federal law and that under Wisconsin's common law, Midwest had a duty to warn its passengers about the dangers of DVT.[4] We conclude that Miezin's claim is impliedly preempted by the Federal Aviation Act and, therefore, affirm the judgment.

¶ 9.   "A fundamental principle of the Constitution is that Congress has the power to preempt state law." *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372 (2000) (citation omitted). However, analysis of preemption claims begins with the presumption that "Congress does not intend to supplant state law." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995).

¶ 10.   The United States Supreme Court has recognized three methods by which Congress can exercise its preemptive power:   express preemption, implied field preemption, and implied conflict preemption. Ex-

---

[4] Miezin also argues that he has established all of the factual elements of his negligence claim. Because we affirm the judgment on federal preemption grounds, we do not address Miezin's factual argument or the discovery materials offered in support of Miezin's claim.

press preemption occurs when Congress enacts an express provision for preemption in any congressional act. *See Crosby,* 530 U.S. at 372. Under implied field preemption, Congress can impliedly preempt state law if "federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516 (1992) (internal quotation marks and citations omitted). Finally, implied conflict preemption will be found "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade v. National Solid Wastes Mgmt. Ass'n,* 505 U.S. 88, 98 (1992) (internal quotation marks and citations omitted).

¶ 11. Numerous courts have addressed whether the Federal Aviation Act impliedly preempts state common-law negligence claims brought by airline passengers. In one such case, the Third Circuit Court of Appeals found implied federal preemption of "the entire field of aviation safety." *See Abdullah v. American Airlines, Inc.,* 181 F.3d 363, 365 (3d Cir. 1999). At issue in *Abdullah* was an allegation that American Airlines was liable under territorial (Virgin Islands) common law for injuries passengers sustained when their aircraft encountered severe turbulence. *Id.* The passengers alleged that the pilot and the flight crew were negligent in failing to avoid the turbulent conditions and to "give warnings reasonably calculated to permit plaintiffs to take steps to protect themselves." *Id.* (footnote omitted).

¶ 12. The court concluded that "the [Federal Aviation Act] and relevant federal regulations establish complete and thorough safety standards for interstate and international air transportation that are not sub-

ject to supplementation by, or variation among, jurisdictions." *Id.* at 367. The court explained: "[B]ecause of the need for one, consistent means of regulating aviation safety, the standard applied in determining if there has been careless or reckless operation of an aircraft, should be federal; state or territorial regulation is preempted." *Id.* at 372. Nonetheless, the plaintiffs were not barred from pursuing state and territorial law remedies based on allegations that federal standards of care were violated. *See id.* at 375. The court held: "Even though we have found federal preemption of the standards of aviation safety, we still conclude that the traditional state and territorial law remedies continue to exist for violation of those standards." *Id.*

¶ 13.   Not all courts have taken such a broad view of federal preemption of air safety standards. Indeed, some have explicitly declined to follow *Abdullah*. *See, e.g., Sakellaridis v. Polar Air Cargo, Inc.*, 104 F. Supp. 2d 160 (E.D.N.Y. 2000) (recognizing that the Second Circuit, in contrast to the Third Circuit, has held that the Federal Aviation Act does not preempt state common-law claims). The Seventh Circuit Court of Appeals has not considered *Abdullah*, although two district court decisions have observed that the Seventh Circuit has acknowledged broad preemption by the Federal Aviation Act in other contexts. *See Deahl v. Air Wisconsin Airlines Corp.*, No. 03C5150, 2003 WL 22843073, at *2 (N.D. Ill. Nov. 26, 2003) ("[T]here is dicta, in the Seventh Circuit, stating tort claims based on inadequate equipment are preempted.") (citing *Bieneman v. City of Chicago*, 864 F.2d 463, 471 (7th Cir. 1988)); *In re Lawrence W. Inlow Accident Litigation*, No. IP 99–0830–C H/G, 2001 WL 331625, at *15 n.11 (S.D. Ind. Feb. 7, 2001) ("The Seventh Circuit has not addressed [Federal Aviation Act] preemption recently,

although it has acknowledged the broad preemptive scope of the [Act] in a different context.") (citing *Kohr v. Allegheny Airlines, Inc.*, 504 F.2d 400, 404 (7th Cir. 1974)).[5]

¶ 14.  Although there are conflicts among courts in the general application of implied preemption by the Federal Aviation Act, the only two cases of which we are aware that involved DVT warnings to airline passengers found implied preemption of state common-law standards of care. *See Witty v. Delta Air Lines, Inc.*, 366 F.3d 380 (5th Cir. 2004); and *In re Deep Vein Thrombosis Litigation*, No. MDL 04–1606 VRW, *et al.*, 2005 WL 591241 (N.D. Cal. Mar. 11, 2005).

¶ 15.  *Witty* was the first case to address the preemption issue with respect to DVT warnings, and involved facts similar to those presented in the instant case. Milton Witty claimed that he developed DVT while on a Delta flight from Louisiana to Connecticut. 366 F.3d at 381. He alleged that Delta negligently failed to warn passengers about the risks of DVT, provide adequate leg room and allow passengers to exercise their legs. *Id.* at 382. With respect to the failure-to-warn allegation, the Fifth Circuit concluded that "field preemption and conflict preemption are both applicable, because there exists a comprehensive scheme of federal regulation, and the imposition of state standards would conflict with federal law and interfere with federal objectives." *Id.* at 384. "Congress intended to preempt

---

[5] "We may cite to unpublished opinions from other jurisdictions." *Burbank Grease Servs, LLC v. Sokolowski*, 2005 WI App 28, ¶ 22 n.10, 278 Wis. 2d 698, 693 N.W.2d 89, (citing *Predick v. O'Connor*, 2003 WI App 46, ¶ 12 n.7, 260 Wis. 2d 323, 660 N.W.2d 1). We do so in this opinion because we have examined several federal district court cases for their persuasive value.

state standards for the warnings that must be given airline passengers." *Id.* at 383.

¶ 16.  *Witty's* analysis was based on its recognition that there are numerous federal regulations affecting warnings and instructions that must be given to airline passengers. *See id.* at 384. The regulations require, for example, "no smoking" placards, "fasten seat belt" signs and specific oral briefings that must be provided on each flight. *Id.* Based on these regulations, *Witty* held:

> [F]ederal regulatory requirements for passenger safety warnings and instructions are exclusive and preempt all state standards and requirements. Congress enacted a pervasive regulatory scheme covering air safety concerns that includes regulation of the warnings and instructions that must be given airline passengers . . . .
>
> Allowing courts and juries to decide under state law that warnings should be given in addition to those required by the Federal Aviation Administration would necessarily conflict with the federal regulations. In this case, the conflict is more than theoretical, since Witty claims that a DVT warning should have been given, while federal regulations do not require such a warning. And any warning that passengers should not stay in their seats, but should instead move about to prevent DVT, would necessarily conflict with any federal determination that, all things considered, passengers are safer in their seats . . . .
>
> Moreover, warnings by their nature conflict, in the sense that the import of one warning is diluted by additional warnings that might be imposed under state law . . . .

*Id.* at 385 (footnotes and citations omitted).

¶ 17. The court in *DVT Litigation* essentially agreed with *Witty*'s conclusion and analysis.[6] 2005 WL 591241, at *10–13. The court noted that " 'the whole tenor of the [Federal Aviation Act] and its principal purpose is to create and enforce *one unified system* of flight rules.' " *Id.* at *12 (citing *United States v. Christensen*, 419 F.2d 1401, 1404 (9th Cir. 1969)) (emphasis supplied by *DVT Litigation*). "[T]o this end, the [Federal Aviation Administration] Administrator has enacted a large number of federal regulations governing the warnings and instructions that must be given to airline passengers." *DVT Litigation*, 2005 WL 591241, at *12. The court added:

> Moreover, state-law suits based upon a failure to warn of DVT would most certainly lead to non-uniformity (anathema to the [Federal Aviation Act]), for each time a state jury sustains a failure to warn challenge, airline defendants would be forced to amend their pre-flight warnings to avoid future liability. Moreover, such state law verdicts could be inconsistent amongst themselves. For example, a jury in Arkansas might find that an airline's oral warning of DVT risks insufficient because a reasonably prudent airline would have displayed a video warning demonstrating potential preventative measures is required. A jury in California, however, could find that an oral warning before take-off is sufficient while a jury in Texas could find that an oral warning of DVT prior to take-off is insufficient unless repeated at least three hours into the flight. Juries in the other forty-seven states could

[6] In *In re Deep Thrombosis Litigation*, the court appeared to base its holding solely on implied field preemption, rather than on both implied field and implied conflict preemption. *See* No. MDL 04–1606 VRW, *et al.*, 2005 WL 591241, *14 (N.D. Cal. Mar. 11, 2005).

reach similar or drastically different results when presented with the same question.

*Id.* at \*13.

¶ 18. Like the court in *DVT Litigation*, we agree with the reasoned and well-articulated analysis offered in *Witty*.[7] "[Implied f]ield preemption and conflict preemption are both applicable, because there exists a comprehensive scheme of federal regulation, and the imposition of state standards would conflict with federal law and interfere with federal objectives." *Witty*, 366 F.3d at 384. The pervasive regulations concerning the warnings that must be given to airline passengers indicate that "Congress left no room for the States to supplement" these regulations. *See Cipollone*, 505 U.S. at 516. If state requirements for announcements to airline passengers were not impliedly preempted by the Federal Aviation Act, each state would be free to require any announcement it wished on all planes arriving in, or departing from, its soil. It is hard to see how the amalgam of potentially conflicting messages promoting competing states' interests would not stand "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *See Gade*, 505 U.S. at 98 (internal quotation marks and citations

---

[7] We conclude that *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380 (5th Cir. 2004), is directly on point, and decline to address other cases discussed by the parties that involve incidents that took place during international travel, which are governed under what is commonly referred to as the Warsaw Convention, *see* 49 U.S.C. § 40105, and cases involving the potential application of the express federal preemption provision of the Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b)(1) (previously codified at 49 U.S.C. App. § 1305(a)(1)).

440

omitted). Thus, on the narrow topic before us—warnings that are given to airline passengers—we conclude that the Federal Aviation Act impliedly preempts the application of state common-law negligence standards to failure-to-warn claims like that presented here.

¶ 19.   In addition, like the court in *Witty*, "we need not decide whether a state claim for failure to warn passengers of air travel risks is entirely preempted, or, as [the Third Circuit] held, is preempted to the extent that a federal standard must be used but that state remedies are available." *See* 366 F.3d at 385 (footnote omitted). This is because Miezin, as he explicitly recognizes in his brief, is not claiming that Midwest violated any federal standards in failing to give a warning about DVT. Because Miezin's claim is based solely on the alleged breach of state common-law standards of care, which we conclude are impliedly preempted in this case, we affirm the grant of summary judgment in Midwest's favor.

*By the Court.*—Judgment affirmed.