973 So.2d 33 (2007)
H. Gunther PERDIGAO
v.
DELTA AIRLINES, INC., Paul Baird, Bennie Breaux, and Defendants 1-10.
No. 05-CA-325.
Court of Appeal of Louisiana, Fifth Circuit.
November 13, 2007.
*34 William F. Wessel, Victoria L. Bartels, Wessel & Associates, New Orleans, Louisiana, for Plaintiff/Appellant.
Michael D. Ferachi, Juston M. O'Brien, McGlinchey Stafford, PLLC, Baton Rouge, Louisiana, Jeffrey Ellis, Attorney at Law, New York, New York, for Defendants/Appellees.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY, and WALTER J. ROTHSCHILD.
MARION F. EDWARDS, Judge.
Plaintiff/appellant, H. Gunther Perdigao ("Perdigao"), appeals the dismissal of his Petition for Damages against defendants/appellees, Delta Airlines, Inc. ("Delta") and Paul Baird ("Baird"), the supervisor and head of the Delta office at New Orleans. For the following reasons, we affirm in part, reverse in part, and remand.
Perdigao filed suit against Delta and Baird alleging that, in January 2002, he boarded a Delta flight from New Orleans to Atlanta, with a connecting flight to Miami. On arrival at the Atlanta Airport, the passengers boarded the Miami-bound plane, after which the aircraft sat on the *35 runway for approximately eight hours. During that period of time, Perdigao alleged that the flight crew did not allow the passengers to move about even to use the restrooms, did not allow him to stretch his legs, and "unreasonably" did not serve sufficient beverages to prevent dehydration or attempt to relieve the discomfort of the passengers. Eventually, the plane returned to the gate. Perdigao alleged that, as a result of having sat immobile for that length of time, he developed a blood clot in his leg that dislodged and traveled to his lung, causing a pulmonary embolus and resulting, in severe pain and extensive hospitalization. He further alleged that dehydration worsens deep vein thrombosis ("DVT") and that Delta knew or should have known of the risks and taken steps to alleviate the danger. The petition urged fault on the part of Delta in that it failed to warn against the known hazards of DVT, operated its airplane in a dangerous manner, and failed to take proper safety precautions, including failure to properly train its crew. Baird was allegedly responsible for ensuring the safety and comfort of passengers departing from the New Orleans Airport, ensuring that proper warnings were provided to passengers, and ensuring that "passengers do not needlessly suffer long periods of immobility on an airplane."
The matter was removed to the U.S. District Court and subsequently remanded to the Twenty-Fourth Judicial District Court for procedural reasons. Delta and Baird then filed individual Exceptions of No Cause of Action on the basis that the Federal Aviation Act ("FAA") of 1958, 49 U.S.C. 40101 et seq, preempts any negligence claims and did not impose a duty on an airline to warn about the risk of DVT. Additionally, it was urged that the portion of Perdigao's claim relating to inadequate beverage service and boarding and preflight practices was barred by 49 U.S.C. 41713(b), the 1978 Airline Deregulation Act ("ADA"). The trial court granted the Exceptions, allowing Perdigao leave to amend his petition. Perdigao filed a supplemental and amending petition, adding that the Delta crew prohibited the passengers from standing or moving under threat of arrest and that the decision to remain on the tarmac for eight hours due to continuing inclement weather was unreasonable. Perdigao included a claim of false imprisonment. Delta and Baird again excepted to the petition, and, after argument of counsel, these Exceptions were granted and the action was dismissed with prejudice.
No Reasons were given on the record in the final judgment dismissing the case. However, in its initial grant of the Exceptions, the trial court noted the express preemption provision of the 1978 ADA, the implied preemption of the 1958. FAA, and federal court cases holding there was no duty to warn about individual health issues.
The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition, which is done by determining whether the law affords a remedy on the facts alleged in the pleading. . . . Consequently, the court reviews the petition and accepts well-pleaded allegations of fact as true. . . . The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. . . .
. . . .
The burden of demonstrating that the petition states no cause of action is upon the mover. . . . In reviewing the judgment of the district court relating to an exception of no cause of action, appellate courts should conduct a de novo review because the exception raises a question *36 of law and the lower court's decision is based solely on the sufficiency of the petition. . . . The pertinent question is whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiffs behalf, the petition states any valid cause of action for relief. . . . [1]
(Citations omitted.)
There is no express preemption of air transportation in the FAA. In 1978, Congress enacted the ADA to dismantle federal economic regulation and to prevent the states from frustrating the goals of deregulation by establishing or maintaining economic regulations of their own.[2] The ADA preempts the states from enforcing any law "relating to rates, routes or services" of any carrier.
On appeal, Perdigao argues his claims are not preempted, citing two U.S. Supreme Court cases.[3] Delta and Baird urge that the cases relied on by Perdigao address only the preemptive scope of the 1978 ADA, and that, in the present case, the trial court relied on the "implicit" or "field" preemption of the 1958 FAA. Delta cites several cases in support of its position that "federal law governs the standards for aviation safety," which cases were apparently relied on, at least in part, by the trial court. On review, we find Delta's conclusion that the federal government has implicitly preempted every aspect of the field of aviation is not supported by the jurisprudence.
Preemption ultimately turns on congressional intent.[4] Under the implied preemption doctrines of field preemption and conflict preemption, a state claim is preempted where "Congressional intent to preempt is inferred from the existence of a pervasive regulatory scheme" or where "state law conflicts with federal law or interferes with the achievement of federal objectives."[5]
Morales v. Trans World Airlines, Inc., cited by Perdigao, concluded that the 1958 FAA did not expressly preempt state regulation of air fares and deceptive trade practices, and contained a "saving clause," 49 U.S.C. 1506, providing that nothing in that law shall in any way abridge or alter the remedies then existing at common law or by statute. The Morales court determined that, following the enactment of the 1978 ADA, the express preemption contained in that act precluded any state enforcement action having a connection with or reference to routes, rates, and services of an air carrier.[6]American Airlines, Inc. v. Wolens, also cited by Perdigao, concludes that state law-based court adjudication of routine breach-of-contract claims is permitted under the ADA.
Perdigao urges that, in Hodges v. Delta Airlines, supra, the United States Fifth Circuit recognized that the plaintiff's claims for damages due to personal injury arising under state tort law were not preempted by the ADA. There, plaintiff suffered injuries when a passenger opened an overhead compartment and a case of *37 liquor fell on her. The Hodges court found that Congress did not intend to preempt all state claims for personal injury, and that "Generally . . . state tort laws concerning the operation and maintenance of aircraft can be enforced consistently with and distinctly from the services that Congress deregulated."[7] This reasoning did not extend to all tort claims. The Hodges court distinguished cases in which the action complained of directly affected airlines' services and were, thus, found to have been preempted by the ADA.
In another U.S. Fifth Circuit case, passengers on a plane that had been hijacked filed suit complaining that the airline was negligent in permitting the hijacker to board the aircraft.[8] The Court discussed Hodges and found that the plaintiffs' claim issued from a different perspective that had nothing to do with the airline's economic practices regarding boarding or with the boarding practices that the airline applied. Instead, their claim was that the safety of their flight was jeopardized by the airline's permitting a visibly deranged man to board. "If appellants ultimately recover damages, the judgment could affect the airline's ticket selling, training or security practices, but it would not regulate the economic or contractual aspects of boarding."[9]
Delta contends that the trial court based its judgment on the "implicit preemption" of the 1958 FAA, citing us to City of Burbank v. Lockheed Air Terminal, Inc.[10] The Supreme Court's decision in City of Burbank is a narrow result holding that the field of aviation noise control, not the field of aviation safety, is preempted. Abdullub, v. Am. Airlines, Inc.[11] is a Third Circuit case that is neither controlling nor universally followed, as other federal circuit courts have taken the opposite view.[12]Bieneman v. City of Chicago[13] simply does not stand for the rule of law for which it is offered. Delta argues that, in another U.S. Fifth Circuit case, Witty v. Delta Airlines, Inc.,[14] the court specifically recognized the preemptive aspects of the 1958 FAA. There, Witty claimed Delta was negligent for failing to warn passengers about the risks of developing DVT during flight, for not providing adequate leg room to prevent DVT, and for not allowing passengers to exercise their legs. In finding that such warnings were not mandated, the court concluded that federal regulatory requirements for passenger safety warnings and instructions are exclusive and preempt all state standards and requirements, noting a detailed array of safety-related regulations contained in the Code of Federal Regulations, especially with regard to warnings which must be given. As in City of Burbank v. Lockheed Air Terminal Inc., supra, Witty considered federal legislation outside of the FAA to determine the scope of federal control over the subject. In addition, the Witty court noted its intent to decide that case narrowly by addressing the precise issues before it. In its holding, the court stated:

*38 Ultimately, we need not decide whether a state claim for failure to warn passengers of air travel risks is entirely preempted, or, as another circuit has held, is preempted to the extent that a federal standard must be used but that state remedies are available. We hold that, at a minimum, any such claim must be based on a violation of federally mandated warnings.
(Footnote omitted.)
Witty is a narrow opinion that only applies to warnings given to passengers on commercial airliners. To the extent the trial court based its judgment on an implied preemption of the 1958 FAA, it erred. However, under Witty, Perdigao's claim for failure to warn of the dangers of DVT and the related claims do not state a cause of action.
Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself. These matters are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline. It is these [contractual] features of air transportation that we believe Congress intended to de-regulate as "services" and broadly to protect from state reg-ulation.[15]
Allegations such as "failing to prevent . . . sitting on a runway for approximately eight hours with insufficient mobility and/or hydration of passengers" and "failing to provide sufficient beverages to prevent dehydration" relate to "services" of an airline which the ADA has preempted.
The allegations of the amended petition are not as easily dismissed. Perdigao contended that the airline made "the unreasonable decision to board passengers and leave the gate in weather conditions which make approval of departure unlikely . . . and to remain on the tarmac . . . for 8 hours notwithstanding [the] continuing weather conditions." He further alleged not mere failure of the, crew to serve beverages, but rather that the crew prohibited him and others from obtaining water to avoid dehydration, prohibited him from moving about under threat of arrest, and that its actions amounted to false imprisonment.
There is no "strict dichotomy" between "services" and "operation or maintenance of aircraft,"[16] and the terms "overlap somewhat conceptually," thereby suggesting a case by case resolution of preemption questions.[17] As the Witty court stated, "We do not express an opinion as to whether emergency or unplanned situations on flights can form the basis of a state failure to warn claim that is not preempted."[18]
The conditions described in the amending petition do not lend themselves to a simple analysis and can best be described as extraordinary, while the alleged actions of the crew move beyond questions or issues relating merely to "service." On de novo review, we find that, in the amending petition, Perdigao has stated a cause of action against Delta. However, our review further discloses that the trial court correctly granted the Exception as to Breaux.
For the foregoing reasons, the judgment is affirmed in part and reversed in part. The Exception of No Cause of Action is reversed with regard to Perdigao's claims against Delta in his amended petition. In *39 all other respects, the judgment is affirmed, and the case is remanded for further proceedings.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] Wright v. La. Power & Light, XXXX-XXXX (La.3/9/07), 951 So.2d 1058, 1068-69.
[2] See, Hodges v. Delta Airlines, Inc., 44 F.3d 334 (5th Cir.1995).
[3] Morales v. Trans World Airlines, Inc., 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) and American Airlines, Inc. v. Wolens, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995).
[4] Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).
[5] Id.
[6] See, Morales, supra, at 385, 112 S.Ct. 2031.
[7] Id.
[8] Smith v. Am. West Airlines, Inc., 44 F.3d 344 (5th Cir.1995).
[9] Id. at 347.
[10] 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973).
[11] 181 F.3d 363 (3d Cir.1999).
[12] See, e.g., Cleveland ex rel. Cleveland v. Piper Aircraft Corp., 985 F.2d 1438 (10th Cir.1993); Public Health Trust of Dade County, Fla. v. Lake Aircraft, Inc., 992 F.2d 291, 295 (11th Cir.1993).
[13] 864 F.2d 463 (7th Cir.1988).
[14] 366 F.3d 380 (5th Cir.2005).
[15] Hodges, supra, at 336.
[16] Witty, supra (citing Hodges, supra).
[17] Id.
[18] Witty, supra.