OPINION OF THE COURT
Frederick J. Marshall, J.
Defendants Colgan Air, Inc. and Pinnacle Airlines Corp. have moved this court for an order directing that plaintiffs’ claims be subject to a federal standard of care. Colgan and Pinnacle take the position that the Federal Aviation Act of 1958 (Pub L 85-726, 72 US Stat 731, codified as amended at 49 USC § 40101 et seq. [FAACT]) and federal aviation regulations (EARS) promulgated thereto preempt all state law negligence standards of care. On the other hand, plaintiffs argue that New York State’s negligence standard of care should govern these cases. They say that if federal law preempts an ordinary negligence standard of care, their clients’ claims of negligent training, hiring and retention would be effectively barred.
Plaintiffs’ decedents were among 50 individuals who were tragically killed when Continental Connection Flight 3407 crashed in Clarence Center, New York. Plaintiffs’ claims venture far beyond alleging that the pilot of the airplane, Captain Marvin Renslow, was negligent in his operation of the aircraft. Plaintiffs say that Colgan and Pinnacle were directly negligent in hiring, training and retaining Renslow, who they claim had a history of failed flight tests and exhibited other unsafe tendencies as a pilot.
By applying the doctrine of implied preemption, plaintiffs say, the court will restrict plaintiffs to examining whether Renslow took and passed various flight tests, thereby satisfying certain discreet federal regulations. Escaping scrutiny would be the subjective conduct of Colgan and Pinnacle, to wit: allegedly ignoring the professional shortcomings of Renslow and thereafter negligently hiring and retaining him as a pilot — conduct which, they say, is not the subject of the FAACT or any of its associated regulations.
The defendants counter that the law is clear. The FAACT and EARS impliedly preempt all state standards of care. In order to prevail, the plaintiffs, whose state remedies are expressly *310 preserved under the FAACT, must still prove that defendants violated a federal standard of care as established by the FAACT and FARS.
Discussion
The genesis of Congress’ power to preempt state law lies in the United States Constitution which provides that the laws of the United States “shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.” (US Const, art VI, cl 2.)
Federal preemption may be express or implied. Express preemption is not claimed in this case, but implied preemption is. Preemption of a state law may be implied if that law “actually conflicts with federal law” (see Pacific Gas & Elec. Co. v State Energy Resources Conservation & Development Comm’n, 461 US 190, 204 [1983]), or if federal law so thoroughly occupies a legislative field “as to make reasonable the inference that Congress left no room for the States to supplement it.” (Fidelity Fed. Sav. & Loan Assn. v De la Cuesta, 458 US 141, 153 [1982] [internal quotation marks omitted], quoting Rice v Santa Fe Elevator Corp., 331 US 218, 230 [1947]; Cipollone v Liggett Group, Inc., 505 US 504, 516 [1992].)
Any analysis of preemption issues must begin by acknowledging that there exists “a rebuttable presumption against the preemption of the states’ exercise of their historic police power to regulate safety matters.” (Goodspeed Airport LLC v East Haddam Inland Wetlands & Watercourses Commn., 634 F3d 206, 210 [2d Cir 2011].) Thus, the question before this court is whether defendants have overcome that presumption by showing that Congress intended “to occupy the entire field of air safety, thereby preempting state regulation of that field.” (Id. at 208.)
Defendants point to a litany of federal cases to support their claim of field preemption. (See id.; US Airways, Inc. v O’Donnell, 627 F3d 1318 [10th Cir 2010]; Montalvo v Spirit Airlines, 508 F3d 464 [9th Cir 2007]; Greene v B.F. Goodrich Avionics Sys., Inc., 409 F3d 784 [6th Cir 2005]; Abdullah v American Airlines, Inc., 181 F3d 363 [3d Cir 1999]; French v Pan Am Express, Inc., 869 F2d 1 [1st Cir 1989].) Moreover, defendants point to the decision of Judge Skretny in the parallel actions involving flight 3407, which are pending in the United States District Court, Western District of New York. There, the court found in favor of federal preemption of state standards of care, while preserving *311 plaintiffs’ state remedies under New York law. (In re Air Crash Near Clarence Ctr., N.Y., on Feb. 12, 2009, 798 F Supp 2d 481 [WD NY 2011].)
All of these decisions are founded on the premise that the FAACT and FARS “thoroughly occupy” the field of aviation safety by establishing “complete and thorough safety standards for interstate and international air transportation that are not subject to supplementation by, or variation among, jurisdictions.” (See Abdullah at 367.)
However, the decisions submitted by the defendants do not create an absolute case for federal implied preemption. In Good-speed, the Second Circuit found a “Congressional intent to preempt,” yet found that the requirements of a Connecticut wetlands permitting statute did not create a sufficient interference with federal regulation, so as to fall within the scope of the field of aviation regulation. (Goodspeed at 211.) Here, defendants stress that not only would the application of state standards of care interfere with the federal statutory scheme but could also lead to air carriers having to comply with dozens of different standards of care.
In Abdullah, the Third Circuit found that “the entire field of aviation safety is federally preempted” (Abdullah at 375), and held that “state and territorial standards of care in aviation safety are federally preempted.” (Id. at 376.) Eleven years later, the Third Circuit retreated somewhat from its holding in Abdullah when it decided Elassaad v Independence Air, Inc. (613 F3d 119 [3d Cir 2010]). The plaintiff in Elassaad fell from a staircase while exiting the defendant’s airplane after it landed. The court pointed out that in Abdullah it found that the preempted field was “air safety.” (Abdullah at 376.) In Elassaad it clarified that “air safety” meant “safety while a plane is in the air, flying between its origin and destination.” (Elassaad at 127.) Thus, the court found that “supervision of the disembarkation process by a flight crew [fell] outside the bounds of what [the court was] considering in Abdullah.” (Elassaad at 127.)
There can be no question that the allegations in the plaintiffs’ complaints, as amplified by their bills of particulars, fall squarely within the broad field of air safety. Whether it be Captain Renslow’s direct negligence in operating the aircraft or Colgan’s and Pinnacle’s negligence in training, hiring and retaining Renslow, the conduct alleged is claimed by plaintiffs to be a substantial factor in causing the crash of flight 3407.
*312 Plaintiffs’ push to have the court apply a state standard of care begins with a point of law with which defendants do not disagree. Namely, that the FAACT contains a savings clause which preserves state remedies. The savings clause provides: “A remedy under this part is in addition to any other remedies provided by law.” (49 USC § 40120 [c].) Plaintiffs first contend that the savings clause preserves not only state remedies but also common-law duties of care. There is no question that state remedies are preserved. (See Abdullah at 375; Cleveland v Piper Aircraft Corp., 985 F2d 1438, 1442-1443 [10th Cir 1993].) However, plaintiffs point to no case which holds that state standards of care are encompassed by the savings clause.
Plaintiffs also contend that there is nothing in the language of the FAACT or EARS or in the legislative history that is indicative of any congressional intent to displace common-law reasonable care standards. After all, they argue,
“the FAACT empowers the FAA to ‘prescribe minimum safety standards’ for commercial airline operators, 49 USC § 44701 (b) (1) and to further the FAACT’s general purpose of promoting ‘the duty of an air carrier to provide service with the highest possible degree of safety in the public interest.’ 49 USC § 44701 (d) (1)(A).” (See plaintiffs’ mem of law at 15.)
They further point out that the use of the phrase “minimum safety standards” is indicative of the intent of Congress to create “only a floor” leaving “adequate room for state tort law to operate.” (Geier v American Honda Motor Co., 529 US 861, 868 [2000].) And they contend that that intent includes preservation of state common-law standards of care.
Thirdly, plaintiffs have encouraged this court to take a close look at the action and inaction of Congress in dealing with preemption issues since the passage of the FAACT. However, none of the legislation or proposed legislation cited by plaintiffs convinces this court that congressional intent, apparent within the provisions or history of those laws or proposed laws, may be transmuted to the FAACT. The failure of Congress to restrict state law standards of care is equally unavailing.
Lastly, plaintiffs ask this court to apply state standards of care because, at least with respect to their claims of negligent hiring, training and retention, state standards do not conflict or interfere with federal law. The standard of care in New York State is measured against the conduct of a reasonably prudent *313 person under the same or similar circumstances. {See PJI 2:10.) Mirroring that standard is the general federal standard of care established by 14 CFR 91.13 which provides as follows: “No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.” (14 CFR 91.13 [a].)
However, as pointed out by defendants, federal law provides specific guidelines for matters affecting air safety. Included are measures governing pilot training, certification and hiring. For example, see 49 USC § 44703 (requirements for airman certificates); 14 CFR part 60 (requirements for flight simulator training devices, qualification and use); 14 CFR part 61 (pilot certification); 14 CFR part 91 (pilot operations); 14 CFR part 121 (domestic carrier operations); 14 CFR part 141 (pilot schools); and 14 CFR part 142 (aviation training centers).
With respect to pilot training, certification and hiring, the regulations appear to be exhaustive. (See French v Pan Am Express, Inc. at 4-7.) These regulations pertain to every aspect of flight training, simulator training, testing, pilot qualifications and standards for hiring pilots. As to the latter, Colgan was under a regulatory responsibility not to “use ... an airman . . . unless that person—
“(1) Holds an appropriate current airman certificate issued by the FAA;
“(2) Has any required appropriate current airman and medical certificates in his possession . . . ; and
“(3) Is otherwise qualified for the operation for which he is to be used.” (14 CFR 121.383 [a].)
Other regulations cover areas such as “recent experience” (14 CFR 121.439), “line checks” (14 CFR 121.440) and “proficiency checks” (14 CFR 121.441). Training is extensively covered in subpart N, part 121 of title 14. Qualifications of check airmen and flight instructors are similarly exhaustive. {See 14 CFR 121.411-121.414.)
Thus, as found by the court in French, “[t]he intricate web of statutory provisions affords no room for the imposition of state-law criteria vis-á-vis pilot suitability.” (French at 4.) This conclusion holds notwithstanding that state standards of care may not conflict or interfere with federal law. As stated in French, “[s]o long as occupation of an envisioned field was intended, ‘any state law falling within th[e] field is pre-empted’ ” (French at 6, quoting Silkwood v Kerr-McGee Corp., 464 US 238, 248 [1984]).
*314 Admittedly, the application of the doctrine of implied preemption to thwart state standards of care may sometimes affect the ultimate outcome of a case, possibly resulting in dismissal of a claim.
In Montalvo, the Ninth Circuit Court of Appeals adopted the reasoning in Abdullah, and held that “federal law generally establishes the applicable standards of care in the field of aviation safety.” (Montalvo at 468.) One of the state common-law claims presented in Montalvo was the airline’s failure to warn passengers of the risks of deep vein thrombosis. The court upheld the dismissal of that claim on the basis that there existed “no federal regulations requiring the Airlines to warn about the risks of DVT” (Montalvo at 468). Pointing to extensive federal regulations (the PARS) requiring warnings to be given on airline flights (i.e., no smoking, use of seat belts, oral briefing, upright seat backs and the like) the Ninth Circuit found that, at least in the field of in-flight warnings, “the Administrator has exercised his authority to regulate aviation safety to the exclusion of the states.” (Montalvo at 473.)
Such was also the case in Witty v Delta Air Lines, Inc. (366 F3d 380 [5th Cir 2004]). While the Witty court refused to adopt the broad preemption rule, it still dismissed the plaintiffs failure to warn claim on more narrowly drawn field preemption grounds. (See also Greene.) Thus, in Montalvo, Witty and Greene, plaintiffs were thwarted in their pursuit of a remedy which, under different circumstances, would have been available to them under state common law.
That this court has engaged in a discussion about Montalvo, Witty and Greene should not be taken by defendants as any indication of its opinion concerning the viability of plaintiffs’ claims against Colgan and Pinnacle. That issue, if raised by the defendants, is reserved for another day. These cases simply demonstrate that the doctrine of implied field preemption, applied so as to negate state standards of care in the field of air safety, may prevail despite the possibility of adverse consequences to a plaintiffs claim.
In conclusion, this court agrees with the analysis in French and finds that the pervasiveness and completeness of the federal regulatory scheme leaves no room for state standards of care. Defendants have, in this court’s opinion, overcome the presumption against preemption and their motion is, in all respects, granted.