OPINION OF THE COURT
Frederick J. Marshall, J.
In a previous ruling, this court, citing the pervasiveness and completeness of the federal regulatory scheme, held that the Federal Aviation Act of 1958 (Pub L 85-726, 72 US Stat 731, codified as amended at 49 USC § 40101 et seq. [FAACT]) and federal aviation regulations (FARS) preempted all state standards of care. (.Matter of Air Crash Near Clarence Ctr., N.Y. on Feb. 12, 2009, 38 Misc 3d 308 [Sup Ct, Erie County, Sept. 21, 2012].)
Now plaintiffs move this court for an order imposing upon the defendant, Colgan Air, Inc., a federal general standard of care with respect to their claims of negligent hiring, training, selection and supervision.[1]
On February 12, 2009 Continental Connection Flight 3407, operated by Colgan, crashed on approach to the Buffalo-Niagara International Airport. Forty-nine passengers and crew died in the crash and there was one fatality on the ground. Also, two individuals on the ground were injured.
Colgan concedes that it is vicariously liable for the admitted negligent actions of its pilot and copilot that caused the loss of control and subsequent crash of the airplane. (See aff in opposition of David J. Harrington, Esq. ¶ 24; Colgan mem of law n 1.) However, Colgan argues that any direct claims of liability against air carriers for negligent hiring, training and supervision may only be proved by a showing that the carrier violated specific provisions of the FAACT or FARS. By this motion, plaintiffs have asked this court to recognize a federal general standard of care which, if violated, would impose liability directly against Colgan for its alleged negligent hiring, training and supervision of the pilot and copilot of Flight 3407.
*726 Discussion
L
Plaintiffs first argue that their claims are governed by the general standard of care enunciated in 14 CFR 91.13 (a) which provides that “[n]o person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.”
The plain language of this regulation seems to restrict its applicability to conduct that occurs while an airplane is being “operated” in the air. Colgan urges the court to adopt this interpretation and follow Chief Judge Skretny’s decision in the companion federal cases involving Flight 3407. (See In re Air Crash Near Clarence Ctr, N.Y., 2013 WL 5964480, 2013 US Dist LEXIS 460224 [WD NY, Nov. 8, 2013, No. 09-MD-2085]; see also Williams v U.S. Airways, Inc., 2010 WL 4720844, 2010 US Dist LEXIS 123095 [ED Pa, Nov. 18, 2010, No. 10-CV-0399].)
In urging this court not to follow Chief Judge Skretny’s decision, plaintiffs point to the definition of the phrase “operate aircraft” found in the FAACT. The statute defines “operate aircraft” as “using aircraft for the purposes of air navigation, including — (A) the navigation of aircraft; and (B) causing or authorizing the operation of aircraft with or without the right of legal control of the aircraft.” (See 49 USC § 40102 [a] [35].) Similarly, under section 1.1 of the EARS, the definition of “[o]perate” includes “cause to use or authorize to use aircraft, for the purpose ... of air navigation.” (See 14 CFR 1.1.) Thus, plaintiffs contend that Colgan was “operating” Flight 3407 when it caused or authorized the operation of the aircraft by two allegedly unqualified persons, Captain Renslow and his copilot.
Plaintiffs cite an FAA decision which, they contend, provides an expanded meaning of the term “operate.” In that case, an owner gave permission to a pilot to fly his aircraft and the pilot, while flying the aircraft, engaged in careless and reckless behavior, almost causing a midair collision. (See Matter of Ramon C. Fenner, 1996 WL 336049, 1996 FAA LEXIS 1224 [FAA Order No. 96-17, May 3, 1996], affd sub nom. Fenner v F.A.A., 113 F3d 1251 [11th Cir 1997].) In Fenner, the FAA administrator found that the owner “operated” the aircraft citing the statutory and regulatory definitions of “operate.” However, nothing in that case, nor any other case cited by the plaintiffs, involved allegations of negligent hiring, training or supervision *727 by an air carrier. Fenner and other FAA decisions cited by plaintiffs only demonstrate that a carrier or other owner may be vicariously liable for the careless or reckless actions of a pilot because the carrier or owner authorized the pilot’s use of the aircraft. Consequently, plaintiffs’ claim that the term “operate” found in section 91.13 (a) encompasses its claims of negligent hiring, training and supervision is without support in the law. (See In re Air Crash Near Clarence Ctr, N.Y., 2013 WL 5964480, 2013 US Dist LEXIS 460224 [WD NY, Nov. 8, 2013, No. 09-MD-2085].)
IL
Plaintiffs also ask this court to find a federal general standard of care within the FAACT itself. Indeed, the FAACT does recognize the “duty of an air carrier to provide service with the highest possible degree of safety in the public interest.” (49 USC § 44701 [d] [1] [A].)
Without question, a carrier’s operation of an aircraft must not only comport with specific federal aviation regulations, but also the general standard of section 91.13 (a). (Abdullah v American Airlines, Inc., 181 F3d 363 [3d Cir 1999].) Plaintiffs cite to Abdullah and its progeny to support their claim that an overarching federal general standard of care must be recognized to fill the gaps when more specific regulations are not violated. (See id.; Aldana v Air E. Airways, Inc., 477 F Supp 2d 489 [D Conn 2007]; Shupert v Continental Airlines, Inc., 2004 WL 784859, 2004 US Dist LEXIS 6214 [SD NY, Apr. 12, 2004, No. 00-CV-2743 (LMM)].)
These decisions have one uniform component — they all involve allegedly negligent conduct while an aircraft is being operated. Plaintiffs have not cited to any state or federal decision which recognizes a general federal standard of care governing the hiring, training or supervising of pilots. Yet, they have asked this court to carve a statutory general standard of care out of the language of the FAACT and the numerous federal decisions which acknowledge the duty of carriers to perform their services with the highest possible degree of safety. (See United States v S. A. Empresa De Viacao Aerea Rio Grandense, 467 US 797 [1984]; In re September 11 Litig., 594 F Supp 2d 374 [SD NY 2009].) The Federal Aviation Administration has also cited 49 USC § 44701 (d) (1) (A) in recognizing the statutory duty of carriers to exercise the highest possible degree of care. (See Matter of Alaska Airlines, Inc., 2004 WL 3198210, *6, 2004 FAA LEXIS 905, *14 [FAA Order No. 2004-8, Oct. 4, 2004].)
*728 Colgan argues that the courts have recognized a general federal standard of care relating only to the operation of aircraft in the absence of a specific regulatory violation. (See Abdullah.)
Given the absence of a clear and unequivocal statutory mandate or judicial precedent, this court is reluctant to recognize a federal general standard of care for hiring, training and supervision of pilots. If, as the plaintiffs contend, a general federal standard of care should be based on “the highest possible degree of safety,” would such a standard exceed even the careless or reckless standard found in section 91.13 (a)? Could not the words “highest possible degree of safety” lead a jury to conclude that air carriers must act with near perfection when exercising their judgment in making decisions to hire or retain a pilot? Under the plaintiffs’ proposed standard, no amount of training or retraining would be sufficient to avoid direct carrier liability in the event of an accident. Nothing in the FAACT suggests this result.
With these practical and legal difficulties in mind, the proper standard of care must spring from the numerosity and specificity of the FARS that delineate the requirements that must, at a minimum, be satisfied in order for an air carrier to properly hire and train its pilots.[2] Considering the breadth and scope of the regulatory scheme controlling hiring and training of pilots, plaintiffs’ attempt to find an even higher standard of care within the FAACT, must fail. Carriers are free to exceed the minimum standards of the FARS, but their failure to do so does not leave them short of meeting the standard of care created by the FARS. (See Martin ex rel. Heckman v Midwest Exp. Holdings, Inc., 555 F3d 806, 811 [9th Cir 2009].)
IIL
Lastly, plaintiffs urge the court to look to federal common law to “fill the gaps” that they contend exist with respect to their claims of negligent hiring, training and supervision. However, that approach has been rejected by the federal courts. (See id.)
Conclusion
Where, as here, the regulatory scheme for controlling, hiring, training and supervision of pilots is pervasive, the standard of care is set by those regulations and there is no general federal standard of care independent therefrom.
*729 Plaintiffs’ motion is, in all respects, denied.

. The remaining plaintiffs at the time of the writing of this decision are Johnston and Wielinski. The case of former plaintiff, Krasuski, has now settled.

. Some of these requirements are more specifically discussed in this court’s previous decision. (See Matter of Air Crash Near Clarence Ctr., NY., 38 Misc 3d at 313.)