992 F.2d 291
 61 USLW 2749, Prod.Liab.Rep. (CCH) P 13,480
 The PUBLIC HEALTH TRUST OF DADE COUNTY, FLORIDA, d/b/a
Jackson Memorial Hospital, Plaintiff-Intervenor,
William Dee, Plaintiff-Appellant,
v.
LAKE AIRCRAFT, INC., a foreign corporation registered to do
business in the State of Florida, Aerofab, Inc., a foreign
corporation, Consolidated Aeronautics, Inc., a foreign
corporation, Defendants-Appellees.
 No. 91-5267.
 United States Court of Appeals,
Eleventh Circuit.
 May 28, 1993.
 
 Edward A. Perse, Perse, P.A., Roy D. Wasson, Miami, FL, for plaintiff-appellant.
 Joseph E. Schmitz, Washington, DC, Howard Daigle, Jr., Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, LA, for defendants-appellees.
 Stanley J. Green, Judith Hope, Washington, DC, amicus curiae.
 Appeal from the United States District Court for the Southern District of Florida.
 Before TJOFLAT, Chief Judge, EDMONDSON, Circuit Judge, and DYER, Senior Circuit Judge.
 EDMONDSON, Circuit Judge:
 
 
 1
 The district court entered summary judgment for defendants in this products liability case, which arises from the crash of an amphibious airplane. We must decide whether federal regulations pre-empt Dee's common law claims that an airplane seat was defectively designed even though the seat complied with federal design standards. Because federal law pre-empts none of Dee's claims, we vacate the district court's judgment.
 
 I. Background
 
 2
 Appellant William Dee was the sole passenger in an amphibious airplane manufactured or distributed by defendants Lake Aircraft, Inc., Aerofab, Inc., and Consolidated Aeronautics Inc. Dee sat next to the pilot. The pilot attempted to take off from a lake, but the plane crashed against a rock bank. Dee was seriously and permanently injured. The pilot suffered lesser injuries.
 
 
 3
 Dee sued defendants in negligence and strict liability. Dee claimed that defendants designed his seat in a negligent or defective way (or sold it in that condition) and that this defective design had enhanced Dee's injuries. Dee contends that his seat should have contained an "energy attenuating" mechanism to absorb crash forces. Dee says that the pilot's seat had an energy-absorbing feature: a cut-out portion containing laced rubber strips. Dee's seat, in contrast, was solid metal.
 
 
 4
 On defendants' motion for summary judgment, the district court ruled that Dee's state law claims were pre-empted by regulations promulgated under the Federal Aviation Act, 49 U.S.C.App. § 1301 et seq. Having found state law pre-empted, the district court allowed Dee to file further papers showing a genuine issue whether the aircraft violated federal design standards. Dee filed the affidavit of an expert witness, Dr. Snyder; but the district court found that Snyder's affidavit raised no genuine issue of violation of a federal standard.[1] The district court entered judgment for defendants and dismissed Dee's action. This appeal followed.II. Pre-emption Analysis
 
 
 5
 The issue is whether Congress, in directing the Secretary of Transportation to promulgate federal aircraft design standards, intended to pre-empt the application of additional design standards arising under state tort law.
 
 
 6
 A. Aircraft Design: Federal Regulatory Background
 
 
 7
 1. Regulatory Authority. In the Federal Aviation Act of 1958 ("the Act"), codified as amended at 49 U.S.C.App. § 1301 et seq., Congress gave the Secretary of Transportation ("the Secretary") the authority and the duty to regulate aircraft safety, including the duty to promulgate "such minimum standards governing the design, materials, workmanship, construction, and performance of aircraft ... as may be required in the interest of safety." 49 U.S.C.App. § 1421(a) (1988). Congress created an inspection and certification system which enables the Secretary to enforce federal aircraft design standards.[2] In the case of violations of federal regulations promulgated under section 1421 or of any term, condition or limitation of any certificate issued under the Act, the Secretary may assess civil penalties. 49 U.S.C.App. § 1471.
 
 
 8
 2. General Provisions. As originally enacted, the Act contained no provision expressly addressing federal pre-emption of state efforts to regulate civil aviation. In the Airline Deregulation Act of 1978 ("ADA"), Congress added an explicit pre-emption provision to the general provisions of the original Act. That section provides:
 
 Federal Preemption
 
 9
 (a) Preemption
 
 
 10
 (1) Except [for certain Alaskan intrastate air transportation], no State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority under subchapter IV of this chapter to provide air transportation.
 
 
 11
 49 U.S.C.App. § 1305(a). For background on the ADA amendments to the original 1958 Act, see H.R.Rep. 95-1211, 95th Cong., 2nd Sess. (1978), reprinted in 1978 U.S.C.C.A.N. 3737, 3752 (section 1305 intended to prevent states from filling void left by federal deregulation of airline operations with conflicting and inconsistent state regulations); Morales v. Trans World Airlines, Inc., --- U.S. ----, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992); Cleveland v. Piper Aircraft Corp., 985 F.2d 1438 (10th Cir.1993). The Act also contains a general "remedies" savings clause, which provides:
 
 
 12
 Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.
 
 
 13
 49 U.S.C.App. § 1506; see Morales, --- U.S. at ----, 112 S.Ct. at 2037 (Section 1506 is a "general remedies savings clause," and as a "relic of the pre-ADA/no pre-emption regime" does not supersede the specific pre-emption provision, section 1305.).
 
 
 14
 3. Federal Regulation of Aircraft Seat Design
 
 
 15
 The Secretary has promulgated "airworthiness standards" for aircraft. These regulations include design and construction standards. See 14 C.F.R. Part 23, Subpt. D, §§ 23.601-23.1203. Section 23.785 establishes design and performance standards for seats, berths, safety belts, and harnesses. Section 23.561 establishes general structural standards for emergency landing conditions.
 
 
 16
 The only mention of "energy absorbing" designs in the seat design regulations, at the time of the events in this case, was in § 23.785(j). Subsection (j) said:
 
 
 17
 The cabin area surrounding each seat, including the structure, interior walls, instrument panel, control wheel, pedals, and seats, within striking distance of the occupant's head or torso (with the safety belt harness fastened), must be free of potentially injurious objects, sharp edges, protuberances, and hard surfaces. If energy absorbing designs or devices are used to meet this requirement they must protect the occupant from serious injury when the occupant experiences the ultimate inertia forces prescribed in § 23.561(b)(2).
 
 
 18
 14 C.F.R. § 23.785(j) (1984) (emphasis added). Thus, although federal regulations recognized energy absorbing features as design options, no provision required that aircraft seats contain an energy absorbing device to be certified as "airworthy."
 
 
 19
 At the time of the crash, the aircraft in which Dee was injured had a valid airworthiness certificate, which certified, among other things, compliance with federal design regulations. 49 U.S.C.App. § 1423(a),(c).
 
 B. Pre-emption
 
 20
 In this case, we must determine whether Congress intended, in directing the Secretary to promulgate minimum standards for safe airplane design, to supersede state law on that same subject. If Congress intended to pre-empt state law, the Supremacy Clause, U.S. Const., Art. VI, cl. 2, dictates that the state regulations must yield.
 
 
 21
 Pre-emption may be either expressed or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose. Absent explicit pre-emptive language, [the Supreme Court has] recognized at least two types of implied pre-emption: field pre-emption, where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, and conflict pre-emption, where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.
 
 
 22
 Gade v. National Solid Wastes Management Ass'n, --- U.S. ----, ----, 112 S.Ct. 2374, 2383, 120 L.Ed.2d 73 (1992) (citations and internal quotation marks omitted). Federal law may pre-empt state common law rules in the same ways as state statutes or regulations. Cipollone v. Liggett Group, Inc., --- U.S. ----, ----, 112 S.Ct. 2608, 2621, 120 L.Ed.2d 407 (1992); Papas v. Upjohn Co., 985 F.2d 516, 517-18 (11th Cir.1993). "The purpose of Congress is the ultimate touchstone of pre-emption analysis." Cipollone, --- U.S. at ----, 112 S.Ct. at 2617.
 
 
 23
 The district court ruled that Dee's claims were impliedly pre-empted by federal regulations. But where Congress has with words pre-empted some kinds of state lawmaking, courts are cautious about relying on implied pre-emption theories to limit state authority further.
 
 
 24
 When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of the legislation. Such reasoning is a variant of the familiar principle of expression unius est exclusio alterius: Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted.... Therefore, [courts] need only identify the domain expressly pre-empted by each of those sections.
 
 
 25
 Cipollone, --- U.S. at ----, 112 S.Ct. at 2618.[3]
 
 
 26
 In this case, section 1305 reliably indicates Congress' intent on state authority to regulate civil aviation. See Cleveland v. Piper Aircraft Co., 985 F.2d 1438, 1443-45 & n. 17 (10th Cir.1993).[4] Section 1305 pre-empts state laws "having a connection with or reference to airline 'rates, routes, or services.' " Morales v. Trans World Airlines, Inc., --- U.S. ----, ----, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992). Under Cipollone, we conclude from section 1305 that Congress did not intend to pre-empt state laws on matters unrelated to airline rates, routes or services.[5] Because Dee's design defect claims lie outside the pre-emptive reach of section 1305, we conclude that those claims are not pre-empted.
 
 III. Conclusion
 
 27
 The judgment of the district court is VACATED, and the case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 Having reviewed the record, we agree with the District Court's conclusion that Dee's "submissions, particularly the affidavit of his expert, fail to present facts or evidence sufficient to establish a genuine issue of material fact concerning whether the aircraft components in question complied with federal design and performance standards...."
 
 
 [2]
 When the Secretary is satisfied, after investigation and testing, that a proposed "aircraft [or component] is of proper design, material, specification, construction, and performance for safe operation, and meets the minimum standards, rules, and regulations prescribed by the Secretary," the Secretary may issue a "type certificate." 49 U.S.C.App. § 1423(a)
 When the Secretary is satisfied that duplicates of a type certified aircraft will be produced in conformity with the type certificate, he may issue a "production certificate." The Secretary may inspect or test aircraft for conformity with the type certificate. 49 U.S.C.App. § 1423(b).
 The registered owner of an aircraft may apply for an "airworthiness certificate." The Secretary certifies aircraft as airworthy only if he "finds that the aircraft conforms to the type certificate therefor, and, after inspection, that the aircraft is in condition for safe operation...." 49 U.S.C.App. § 1423(c). The Secretary has the power to prescribe the duration and "such other terms, conditions, and limitations, as are required in the interest of safety" for these three certificates. 49 U.S.C.App. § 1423.
 
 
 [3]
 A majority of Justices in Cipollone agreed that implied pre-emption principles are usually inapplicable where the Act of Congress contains an explicit pre-emption provision. See Cipollone, --- U.S. at ----, 112 S.Ct. at 2618 (plurality opinion); id., at ----, 112 S.Ct. at 2625 (Blackmun, J., concurring) ("Where, as here, Congress has included in legislation a specific provision addressing--and indeed, entitled--pre-emption, the Court's task is one of statutory interpretation--only to 'identify the domain expressly pre-empted' by the provision."); cf. id., at ----, 112 S.Ct. at 2633 (Scalia, J., dissenting in part) (The proposition that "[o]nce there is an express pre-emption provision ... all doctrines of implied pre-emption are eliminated ... may be correct insofar as implied "field" pre-emption is concerned: The existence of an express pre-emption provision tends to contradict any inference that Congress intended to occupy a field broader than the statute's express language defines.")
 
 
 [4]
 Piper Aircraft Co. is much like this case. It does not bind us. And, intercircuit splits on points of law are not all bad. Still, we do listen to other courts. And, we do not create intercircuit splits lightly. When another circuit has ruled on a point, we often follow it (even if we have some doubt about its correctness) unless we believe the decision to be plainly wrong. And, when we do cite and follow other courts, we see no need to repeat all they have already said
 
 
 [5]
 Some question seems to exist about what should be concluded when a state regulation which lies outside the scope of an express pre-emption provision (which, under Cipollone, implies that the state law is not pre-empted) nonetheless actually clashes with federal law (which traditionally has implied that the state law is pre-empted). See Cipollone, --- U.S. at ----, 112 S.Ct. at 2633 (Scalia, J., dissenting in part); Cleveland, 985 F.2d at 1447 n. 20
 But the case we decide today presents no actual conflict. Federal aircraft design regulations did not require, but did permit manufacturers to use energy absorbing designs, such as the laced, cut-out portion featured in the pilot seat of the aircraft in this case. See supra 14 C.F.R. § 23.785(j) (1984). Dee seeks to hold defendants liable for errors of omission: he claims defendants should have exceeded the minimum federal standards for aircraft design, but failed to do so. Appellant does not contend defendants are liable, under state law, for an act of compliance with a federal requirement, nor does he challenge defendants' choice between two federally approved options analogous to the federal standards in the airbag cases. Cf. Taylor v. General Motors Corp., 875 F.2d 816, 823, 827 (11th Cir.1989) (federal law mandated use of either seatbelts or airbags, so state law action with effect of requiring airbags took away the belts-only option and was impliedly pre-empted).