**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LOLA F. MARTIN, a minor, by and
through her guardian ad litem,
CARRIE HECKMAN, an individual;
MALCOLM D.S. MARTIN, a minor,
by and through his guardian ad
litem, CARRIE HECKMAN, an
individual; WRYE MARTIN; CARRIE
HECKMAN, individuals,
                    *Plaintiffs,*

                v.

MIDWEST EXPRESS HOLDINGS, INC.;
MIDWEST EXPRESS AIRLINES, INC.,
a/k/a MIDWEST AIRLINES; SKYWAY
AIRLINES, a/k/a ASTRAL AVIATION,
INC.,
    *Defendants-third-party-plaintiffs-*
                    *Appellants,*

                v.

EBERHARD BRAUN; FAIRCHILD
DORNIER LUFTFAHRT BETEILINGUNGS
GMBH; FAIRCHILD DORNIER
GMBH; FAIRCHILD DORNIER
CORPORATION,
    *Third-party-defendant-Appellees.*

No. 07-55063

D.C. No.
CV-03-04796-GAF

OPINION

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

1429

Argued and Submitted June 6, 2008
Submission Deferred June 6, 2008
Resubmitted February 9, 2009
Pasadena, California

Filed February 9, 2009

Before: Alex Kozinski, Chief Judge, Carlos T. Bea,
Circuit Judge, and Marilyn L. Huff,* District Judge.

Opinion by Chief Judge Kozinski;
Concurrence by Judge Bea

---

*The Honorable Marilyn L. Huff, United States District Judge for the
Southern District of California, sitting by designation.

---

**COUNSEL**

John P. McNicholas, McNicholas & McNicholas, Los Angeles, California, for the plaintiffs.

Ralph S. LaMontagne, Jr., Shaw Terhar & LaMontagne, Los Angeles, California, for the defendants-third-party-plaintiffs-appellants.

Arthur I. Willner, Berger Khan Shafton Moss Figler Simon & Gladstone, Los Angeles, California, for the third-party-defendant-appellees.

---

**OPINION**

KOZINSKI, Chief Judge:

We consider whether, and to what extent, the Federal Aviation Act, 49 U.S.C. §§ 40101 et seq., preempts an airline passenger's personal injury claims.

**Facts**

A pregnant woman fell from an airplane's stairs, injuring herself and her fetus. She sued the airline, Midwest Express, and the airplane's manufacturer, Fairchild Dornier and related companies, alleging that the stairs were defectively designed because they had only one handrail. Midwest Express settled the claim for $8 million, and now seeks indemnity from the manufacturer. Relying on *Montalvo* v. *Spirit Airlines*, 508 F.3d 464 (9th Cir. 2007), the manufacturer argues that the Federal Aviation Act preempts the passenger's personal injury claims and, consequently, Midwest Express' indemnity claim.

**Analysis**

**[1]** The Federal Aviation Act has no express preemption clause. The personal injury claim here conflicts with no provision of the act or regulation promulgated under it. The manufacturer's argument thus rests on implied field preemption.

**[2]** The touchstone of preemption is congressional intent. *Cipollone* v. *Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). To find field preemption here, we must infer that Congress intended to exclude all state law personal injury suits from the area of air travel, even though it didn't say so. The FAA betrays no such intention. It expressly preserves state remedies, declaring "[a] remedy under this part is in addition to any other remedies provided by law." 49 U.S.C. § 40120(c). Moreover, it requires airlines to maintain liability insurance "sufficient to pay . . . for bodily injury to, or death of, an individual or for loss of, or damage to, property of others, resulting from the operation or maintenance of the aircraft." 49 U.S.C. § 41112. As the FAA doesn't create a federal cause of action for personal injury suits, *see Bennett* v. *Southwest Airlines Co.*, 484 F.3d 907 (7th Cir. 2007), this clause can only contemplate tort suits brought under state law.

Two amendments to the FAA added limited preemption provisions, neither of which applies here. The Airline Deregulation Act preempts laws and regulations "related to a price, route, or service" of airlines. 49 U.S.C. § 41713. The General Aviation Revitalization Act provides an eighteen-year statute of repose for product liability claims against airplane manufacturers. 49 U.S.C. § 40101. As we explained in *Charas* v. *Trans World Airlines, Inc.*, the airline regulatory acts "evidence[ ] congressional intent to prohibit states from regulating the airlines while preserving state tort remedies that already existed at common law." 160 F.3d 1259, 1265 (9th Cir. 1998); *see American Airlines, Inc.* v. *Wolens*, 513 U.S. 219, 234 & n.9 (1995) (suggesting that the airline regulatory statutes "leave[ ] room for personal injury claims").

**[3]** While the FAA did not displace all state tort law touching air travel, neither did it leave states free to impose tort liability on all aspects of airplane operations. Citing "the pervasive nature of the scheme of federal regulation of aircraft noise," *City of Burbank* v. *Lockheed Air Terminal*, 411 U.S. 624, 633 (1973), held that the FAA and the Noise Control Act preempted a noise ordinance prohibiting planes from taking off between 11 p.m. and 7 a.m. Aircraft noise, the Court reasoned, is inextricably linked to the movement of aircraft, which is under exclusive federal control. As Justice Jackson had earlier remarked, "[p]lanes do not wander about in the sky like vagrant clouds. They move only by federal permission . . . under an intricate system of federal commands." *Northwest Airlines, Inc.* v. *Minnesota*, 322 U.S. 292 (1944) (Jackson, J., concurring).

**[4]** Following *Burbank*, the circuits have generally analyzed FAA preemption by looking to the pervasiveness of federal regulations in the specific area covered by the tort claim or state law at issue. Claims regarding airspace management, pilot qualifications and failure to warn have been declared preempted. *French* v. *Pan Am. Express, Inc.*, 869 F.2d 1 (1st Cir. 1989); *Kohr* v. *Allegheny Airlines, Inc.*, 504

F.2d 400 (7th Cir. 1974); *Witty* v. *Delta Air Lines, Inc.*, 366 F.3d 380 (5th Cir. 2004). But several defective product claims, such as the claim here, have not. *Cleveland* v. *Piper Aircraft Corp.*, 985 F.2d 1438 (10th Cir. 1993); *Public Health Trust of Dade County, Fl.* v. *Lake Aircraft, Inc.*, 992 F.2d 291 (11th Cir. 1993). *See also Air Transp. Ass'n of Am.* v. *Cuomo*, 520 F.3d 218 (2d Cir. 2008) ("we have acknowledged that the FAA does not preempt all state law tort actions").

**[5]** The Third Circuit, considering a failure to warn claim, took a different approach. Rather than limiting its analysis to regulations on warnings, the court decided that "federal law establishes the applicable standards of care in the field of air safety, generally, thus preempting the entire field from state and territorial regulation." *Abdullah* v. *American Airlines, Inc.*, 181 F.3d 363, 367 (3d Cir. 1999). The savings and insurance clauses, the court reasoned, only preserve state remedies, while excluding all state standards of care. *Id.* at 367-68. In *Montalvo* v. *Spirit Airlines*, citing *Abdullah*, we stated that the FAA "demonstrate[s] an intent to occupy exclusively the entire field of aviation safety and . . . preempt all state law in this field." 508 F.3d 464, 471 (9th Cir. 2007).

**[6]** Considered as a whole, however, *Montalvo* cuts against the manufacturer's argument for broad FAA preemption. *Montalvo* dealt with three state tort claims against an airline, all based on passengers getting dangerous blood clots from long flights in cramped seating. 508 F.3d at 469. First, passengers claimed that the airline was negligent because the crew didn't warn them about blood clots, or tell them how to lessen their risk. *Id.* The FAA, we held, preempts this claim, and "all state law on the subject of air safety." *Id.* at 472.

**[7]** Our analysis rested heavily on the Federal Aviation Administration's "pervasive regulations" of warnings to passengers. *Id.* The familiar litany of warnings—seatbelts should be worn low and tight around the hips; the seat cushion can be used as a flotation device—is federally required. *Id.* at 473;

14 C.F.R. § 121.571. The agency intended its list of warnings to be comprehensive. 508 F.3d at 473. If every state could supplement this list through tort law or legislation, there would be so many warnings that the ones the agency prescribed would be drowned out by the others. As the Fifth Circuit explained in *Witty*, "warnings by their nature conflict, in the sense that the import of one warning is diluted by additional warnings that might be imposed under state law." 366 F.3d at 385. Therefore, the FAA preempts any state tort claim based on a theory that the warnings required by the agency are insufficient.

**[8]** Relying on this section of *Montalvo*, the manufacturer argues that the FAA preempts all personal injury claims by airline passengers, except claims based on violations of specific federal regulations. However, this argument conflicts with the second part of *Montalvo*, which considered a claim that the seating configuration was too cramped, putting passengers at risk of blood clots. *Id.* at 474. The passengers didn't allege that the seating violated a federal regulation, *id.*; *see* 14 C.F.R. § 23.785, and yet we didn't hold that the FAA preempted the claim, which would follow from a broad reading of the first section. Indeed, we didn't consider FAA preemption at all. Instead, we reversed the district court's holding that the Airline Deregulation Act preempted the claim and remanded for consideration whether providing roomier seating would significantly affect ticket prices or competition between airlines—a required element for ADA preemption. 508 F.3d at 475.

**[9]** In a third claim, the *Montalvo* plaintiffs alleged that the airplane seats were defectively designed. The district court held that the FAA impliedly preempted the claim because seat designs were pervasively regulated, noting that "the FAA Administrator has enacted a wealth of federal regulations governing the design, maintenance, structure and position of aircraft seats." *In re Deep Vein Thrombosis Litig.*, 2005 WL 591241 at *14 (N.D. Cal. 2005). The plaintiffs did not appeal

that holding. Our analysis of *Montalvo* does not depend, as the concurrence argues, on any analogy between the seating design and configuration claims. Concurrence at 1142. Rather, it springs from *Montalvo*'s different treatment of the seating configuration and failure to warn claims. If *Montalvo* had held that the FAA preempts *all* state law personal injury claims, it would have been unnecessary to reverse the district court's dismissal of the seating configuration claim and remand for further consideration of ADA preemption.

Furthermore, the manufacturer's broad reading of *Montalvo*, precluding any claim not based on a violation of a specific federal regulation, is in tension with our en banc decision in *Charas*. *Charas* considered several state law personal injury claims based on aircrews' negligent actions, such as leaving luggage in the aisles and hitting passengers with the beverage cart. *Id.* at 1261. *Charas* even considered a claim similar to the one here, that the aircrew negligently allowed a passenger to fall from a stairway with only one handrail. *Id.* at 1261-62. That passenger also brought the exact claim at issue here, that the stair design was defective, but the district court held that the claim was not preempted and the airline did not appeal. *Id.* Reading the ADA's preemption provision narrowly, we overruled several district courts, and two of our own decisions, and held that Congress "did not intend to preempt passengers' run-of-the-mill personal injury claims," drawing no distinction between state remedies and state standards of care. *Id.* at 1261, 1265. Although *Charas* did not consider FAA preemption, it reversed several district court and panel decisions for interpreting ADA preemption too broadly. This holding would be moot if all the claims at issue were preempted anyway by the FAA.

The concurrence argues there is a federal standard of care in all airplane personal injury cases, but that it is not exclusively set by federal regulations. Instead, in areas without pervasive and relevant regulations, the federal standard should be set by expert testimony on standard industry practices. Con-

currence at 1445-47. But neither *Montalvo* nor *Abdullah*, nor any language in the FAA, contemplates such a rule; *Montalvo* does not mention expert testimony at all, and *Abdullah* suggests that it could be used only for interpreting the relevant federal regulations, not for setting a federal standard independent from the regulations. *Abdullah*, 181 F.3d at 371-72. The FAA itself makes no mention of federal courts developing a federal common law standard of care for airplane personal injury actions, and "[t]here is no federal general common law." *Erie R.R.* v. *Tompkins*, 304 U.S. 64, 78 (1938); *see generally* Suzanna Sherry, *Overruling Erie: Nationwide Class Actions and National Common Law*, 156 U. Penn. L. Rev. 2135, 2138 (2008) (advocating the demise of the *Erie* doctrine for tort actions that impact national markets).

**[10]** *Montalvo*, then, neither precludes all claims except those based on violations of specific federal regulations, nor requires federal courts to independently develop a standard of care when there are no relevant federal regulations. Instead, it means that when the agency issues "pervasive regulations" in an area, like passenger warnings, the FAA preempts all state law claims in *that* area. In areas without pervasive regulations or other grounds for preemption, the state standard of care remains applicable.

**[11]** This conclusion accords with the decisions of other circuits, refusing to find various defective product claims impliedly preempted by the FAA in the absence of relevant and pervasive regulations on the allegedly defective part. The Tenth Circuit, in *Cleveland* v. *Piper Aircraft Corp.*, held that a claim that a plane was defectively designed because the pilot had inadequate visibility was not preempted, although the design violated no federal regulations and was approved by the agency. 985 F.2d at 1445. And in *Public Health Trust of Dade County, Fl.* v. *Lake Aircraft, Inc.*, the Eleventh Circuit held that the FAA didn't preempt a defective seat design claim. 992 F.2d at 292, 295. *See also Greene* v. *B.F. Goodrich Avionics Sys., Inc.*, 409 F.3d 784, 788-89, 794-95 (6th

Cir. 2005) (citing *Abdullah* to find FAA preemption of a failure to warn claim, but applying a state law analysis to a claim that a navigational instrument was defectively manufactured).

The manufacturer further argues that defective product claims are preempted by the federal certification process required for every plane design. To certify a plane design, the manufacturer must show that it meets the agency's regulations, and "that no feature or characteristic makes it unsafe." 14 C.F.R. § 21.21. The regulations contain numerous specific requirements for the designs, largely focused on preventing crashes and limiting the seriousness of those that occur. *See, e.g.*, 14 C.F.R. §§ 25.341, 25.561. They also include a prohibition on "design features or details that experience has shown to be hazardous or unreliable." 14 C.F.R. § 25.601. The agency generally uses sections 25.601 and 21.21 when implementing "special conditions," alternative requirements for plane designs with "novel or unusual" components "not envisioned" by the other regulations. 73 F.R. 389-01; 72 F.R. 57842-01; *see* 14 C.F.R. § 21.16; *but see* 70 F.R. 76728-01 (declaring that a seat belt design does not comply with section 25.601). When a design does not include novel components, the certification process simply implements the specific regulations. *See GATX/Airlog Co.* v. *United States*, 286 F.3d 1168, 1171 (9th Cir. 2002). There's no indication that the agency has interpreted sections 25.601 and 21.21 as directing it to pervasively regulate every aspect of plane design.

**[12]** Airstairs are not pervasively regulated; the only regulation on airstairs is that they can't be designed in a way that might block the emergency exits. 14 C.F.R. § 25.810. The regulations have nothing to say about handrails, or even stairs at all, except in emergency landings. No federal regulation prohibits airstairs that are prone to ice over, or that tend to collapse under passengers' weight. The regulations say nothing about maintaining the stairs free of slippery substances, or fixing loose steps before passengers catch their heels and trip. It's hard to imagine that any and all state tort claims involving

airplane stairs are preempted by federal law. Because the agency has not comprehensively regulated airstairs, the FAA has not preempted state law claims that the stairs are defective.

For the reasons set forth in the accompanying memorandum, the airline did not waive its right to indemnity through the sales contract.

**REVERSED.**

---

BEA, Circuit Judge, concurring:

I agree the district court's order dismissing the complaint should be reversed, but to another result. This is because I read *Montalvo v. Spirit Airlines*, 508 F.3d 464 (9th Cir. 2007), quite differently than does the majority. In *Montalvo* there were two claims on appeal: (1) a claim the airline negligently failed to warn passengers—including the plaintiffs—of the risk of deep vein thrombosis, caused by prolonged sitting during flight, and (2) a claim the airline negligently configured placement of the airplane seating so to cramp passenger movements and lead to the onset of deep vein thrombosis. The *Montalvo* court affirmed the district court's order dismissing the plaintiffs' failure to warn claim on the ground such claims are preempted by the Federal Aviation Act ("FAA") due to pervasive federal regulations governing airplane warnings. The court reversed the district court's order dismissing the plaintiffs' negligent seating configuration claim and remanded that claim to the district court so it could analyze whether seating configuration affects ticket prices, which would in turn render the claim preempted under the Airline Deregulation Act.

The majority concludes that had the *Montalvo* panel thought the negligent seating configuration claim was pre-

empted under the FAA, and not just possibly preempted under the Airline Deregulation Act, it would have dismissed that claim outright on FAA preemption grounds instead of remanding it. Rather, says the majority, because the *Montalvo* court did not dismiss the negligent seating *configuration* claim as preempted by the FAA, negligent seat *design* claims generally are not preempted by the FAA. And, if negligent seat design claims are not preempted by the FAA, how can negligent stairway design claims be preempted? Neither seat design nor stairway design are specifically called out by federal regulations in any way similar to passenger safety warnings.

I part with the majority as to *Montalvo* at two points. First, in the majority's major premise: that airline seat configuration and seat design are analogous for purposes of determining whether federal preemption exists. Second, that *Montalvo* directs an implication that absent "pervasive" federal regulations on seat design, no federal standard of care exists.

First, that airline seat configuration and seat design are not analogous and should be subject to different liability rules makes some sense. Airline seat configuration is determined by the airline; seat design is determined by the manufacturer. The airlines have different business locations; they fly intrastate as well as interstate. They can expect to be subject to local notions of passenger safety. On the other hand, airplane manufacturers design and manufacture similar seats for airplanes sold throughout the country and overseas; they lack knowledge of precisely where the airplane will end up or how the airline buyer will configure the seats' placement. Airplane manufacturers should be able to rely on a uniform rule for proper seat design and construction.

Second, in *Montalvo* the plaintiffs brought not only a claim for negligent configuration, but also one for negligent design of the seats themselves. The district court dismissed the negligent design claim as preempted by the FAA—and that ruling

was not appealed. *See In re Deep Vein Thrombosis Litig.*, No. 04-1606, 2005 WL 591241 at *14 (N.D. Cal. Mar. 11, 2005).

Accordingly, contrary to the majority's view that *Montalvo* implicitly decided there was no federal preemption of the negligent seat design claim, the lesson of *Montalvo* is that the plaintiffs thought so little of the idea that federal law did *not* preempt state theories of negligent design liability that they chose to let dead dogs lie by not even attempting to resuscitate that claim by appeal. But note, there was no more "pervasive" federal regulation of seat design than there is of stairway bannister design.

Even if it did not decide the precise issue before us, however, *Montalvo* still provides the framework by which we analyze preemption of state law tort actions against airlines, and I think the solution to this case lies in *Montalvo*'s plain text: "[w]e adopt the Third Circuit's broad, historical approach [in *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363 (3d Cir. 1999)]." *Montalvo*, 508 F.3d at 468.

*Abdullah* involved a negligence action for physical injuries sustained by several airline passengers during severe in-flight turbulence; the passengers alleged the airline failed to give them adequate warning of the oncoming turbulence. There, the Third Circuit held the FAA preempts *only* the standard of care in state law tort personal injury causes of action, and replaces each state's standard of care with a single federal one. 181 F.3d at 371. This preemption applies only to the standard of care: the remaining tort elements of breach, causation, and damages are each governed by state law. *Id.* at 375.[1]

---

[1] The Supreme Court approved a framework similar to this in the nuclear power plant safety regulation context. *See Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984). The *Silkwood* Court held that because, as here, the Atomic Energy Act included language indicative of congressional intent to preserve state law personal injury actions based on violations of nuclear power plant safety standards, regulations promulgated by the Nuclear Regulatory Commission were the "exclusive authority" regarding "[nuclear plant] safety *standards*," but Congress did not otherwise preempt "state tort *remedies*" such as punitive damages. *Id.* at 253 (emphases added).

The *Abdullah* and *Montalvo* courts were faced with areas in which the FAA had relevantly and pervasively regulated, such as airline warnings, and they found state law causes of action preempted due to those relevant, pervasive regulations. Not so here: in the field of aircraft design regulation, the FAA directs only the conditions under which the *government* may grant an aircraft design a "certificate" that permits production; the FAA does not prescribe general standards the manufacturer must follow to exercise reasonable care in designing a safe aircraft. *See* 14 C.F.R. § 21.21 (providing the government may not issue a "certificate" allowing production unless the FAA Administrator finds "no feature or characteristic" makes the plane "unsafe for the category [of aircraft] for which certification is requested")[2]; 14 C.F.R. § 25.810 (providing that if airplane stairs also serve as an emergency exit, the government may not grant a "certificate" unless the manufacturer shows the stairs will function in case of an emergency).

Thus, the question here is whether the *Abdullah* rule, which establishes federal preemption of state standards of care in state law personal injury actions against airlines, applies to negligent design actions in which the FAA has not promulgated relevant regulations describing the particular obligations of the airline. The majority holds the *Abdullah* rule does not apply to such a situation, and that state law standards of care

---

[2]This court has explained that 14 C.F.R. § 21.21 merely requires the Federal Aviation Administrator to certify the plane is not unsafe based on engineering data provided by the manufacturer which shows the plane meets all of the *other regulations* promulgated under the FAA for airplane design; it does not provide an independent general standard to judge the safety of an airplane. *See GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1171 (9th Cir. 2002) ("The first stage of [the airplane approval] process is type certification, in which airplane manufacturers seek approval of new aircraft designs. Under federal regulations, aircraft manufacturers must analyze and test their new aircraft designs. Based on the resulting engineering and test data, the FAA then determines the airworthiness of those designs [pursuant to 14 C.F.R. § 21.21]. If the manufacturer demonstrates that the design complies with federal regulations, the FAA issues a type certificate.").

govern.[3] Some courts in the Third Circuit have reached a conclusion opposite to the majority's, and have interpreted *Abdullah* to hold that failure to allege a federal standard of care that the carrier allegedly breached is a defect fatal to the complaint. *See, e.g.*, *Landis v. U.S. Airways*, No. 07-1216, 2008 WL 728369 (W.D. Pa. Mar. 18, 2008) ("Because the standard of care imposed by state common law is preempted by the FAA, and Landis has not otherwise set forth a federal standard of care alleged to have been breached, her claims against U.S. Airways are properly dismissed.").[4]

However, as I read *Abdullah*, expressly adopted by *Montalvo*, 508 F.3d at 468, the court contemplated district courts would allow a factfinder to consider relevant FAA regulations and, to the extent those regulations are unclear or non-existent, *expert testimony of common industry practices*, as relevant evidence of reasonable care under the circumstances, so the factfinder might determine the applicable standard of care. *See id.* at 371; *see also, e.g.*, *Elassaad v. Independence Air, Inc.*, No. 05-2328, 2008 WL 3895566 (E.D. Pa. Aug. 20, 2008) (dismissing, under *Abdullah*, a claim against an airline for negligent failure to assist a passenger, on the grounds the plaintiff did not show an absence of relevant FAA regulations

---

[3]Contrary to the majority's position, neither *Abdullah* nor *Montalvo* contemplated state standards of care would apply in any circumstance. *See Abdullah*, 181 F.3d at 367 ("[W]e hold that federal law establishes the applicable standards of care in the field of air safety, generally, thus preempting the entire field from state and territorial regulation.").

[4]The majority asserts that a reading of *Montalvo* contrary to its own would be "in tension" with our en banc ruling in *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259 (9th Cir. 1998). Respectfully, I do not see how this can be the case. *Charas* dealt with preemption of airline passenger personal injury negligence claims, such as those for injuries due to wayward drinks carts and falling luggage, under the Airline Deregulation Act—*a different statute* than the FAA, the statute at issue here. We concluded that Congress intended airline "services" to be economic in nature for preemption to apply under the Airline Deregulation Act. In the present case, unlike *Charas* and *Montalvo*, there is no contention on appeal that the plaintiffs claims are preempted by the Airline Deregulation Act.

and "has not pointed to case law or expert testimony" that the standard of care required the defendant "to offer assistance to the plaintiff"). Indeed, in *Abdullah* the FAA *had* issued regulations relevant to the standard of care—but the court nevertheless found "expert testimony on various aspects of aircraft safety may be helpful to the jury" in identifying and applying the correct standard of care created by those federal regulations.[5] *Id.*

---

[5]The majority cites *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938), for the proposition there cannot be a federal standard of care for airline personal injury torts because, in diversity cases, "[t]here is no federal general common law." *Erie* was a railroad accident case that involved only state common law negligence; it involved no claim of preemption based on any Interstate Commerce Commission regulations regarding the design of railcar door latches or how to keep railcar doors from swinging open and hitting nearby pedestrians. Here, on the other hand, we have a federal statute (the FAA) that we have held partly displaces state law through preemption of personal injury tort standards of care. *Abdullah*, 181 F.3d at 375; *Montalvo*, 508 F.3d at 468. In such a case, *Erie* does not apply. *See, e.g., Sola Electric Co. v. Jefferson Electric Co.*, 317 U.S. 173, 176 (1942) ("[T]he prohibition of a federal statute may not be set at naught, or it benefits denied, by state statutes or state common law rules. In such a case our decision is not controlled by [the *Erie* rule]."). Rather, a federal court hearing the dispute may—indeed, must—create gap-filling rules to effect the federal statute involved. *See, e.g.*, Ernest A. Young, *Preemption and Federal Common Law*, 83 NOTRE DAME L. REV. 1639, 1642-43 (2008) ("Federal common law comes in a number of different forms . . . . [W]hen Congress leaves gaps in federal statutes—when it fails to specify a measure of damages for new federal claims, for example—it means for the courts to fill in those gaps through federal common lawmaking.").

What is more, a state court addressing our issue in a case with no diversity of citizenship would *also* be required to determine the relevant federal standard of care—precisely the kind of analysis that takes place, for instance, when a state court adjudicates an action under the Federal Employers' Liability Act. *See, e.g., Texas & P. Ry. Co. v. Younger*, 262 S.W.2d 557, 559-560 (Tex. Civ. App. 1953) ("While suits under the Federal Employers' Liability Act may be maintained in appropriate courts of any state, [the state court must apply] the laws of the United States and not . . . state laws.").

In other words, the majority is incorrect to assume the crucial question is simply whether our jurisdiction lies in diversity. *See* Martha A. Field, *Sources of Law: The Scope of Federal Common Law*, 99 HARV. L. REV.

Here, we have a negligence[6] case in which there are no regulations that dictate whether an airplane staircase must have one or two handrails. As a negligence case, reasonable care applies, and expert testimony (or FAA regulations, if there were any) should be admitted so a factfinder might determine what reasonable care means in airplane design at a nationwide level. For instance, an expert may testify all other commercial passenger airplane staircases designed in the United States use two handrails; based on this testimony, a factfinder might well conclude that using only one handrail was unreasonable and, thus, negligent.

This reading of *Montalvo* and *Abdullah* makes more sense to me than the majority's. Without federal preemption of the standard of care in personal injury tort actions, airlines and airplane manufacturers would be subject to the standard of care in whichever state their planes happen to be in (or over) when the injury occurs; the majority's rule essentially means airlines and airplane manufacturers must prepare for fifty

---

881, 911 n.140 (1986) ("Occasionally, courts or commentators carelessly or mistakenly suggest that *Erie*'s boundaries relate to the jurisdictional basis of the particular lawsuit, stating that *Erie* applies in diversity cases in federal courts. [Rather], 'it is the *source* of the right sued upon, and not the ground on which federal jurisdiction over the case is founded, which determines the governing law.' ") (citations omitted, emphasis in original); *see also Maternally Yours v. Your Maternity Shop*, 234 F.2d 538, 540 n.1 (2d Cir. 1956) ("[T]he *Erie* doctrine applies, whatever the ground for federal jurisdiction, to any issue or claim which has its source in state law. Likewise, the *Erie* doctrine is inapplicable to claims or issues created and governed by federal law, even if the jurisdiction of the federal court rests on diversity of citizenship.") (citations omitted).

[6]Although this action was originally brought by the injured plaintiff under a strict liability theory, our case stems from a *third party complaint* by Midwest Express seeking indemnity against Fairchild Dornier for *negligent design of the aircraft*. Midwest Express's theory is that Fairchild Dornier failed to employ reasonable care in designing the aircraft staircase because, according to the allegations of the complaint, unlike most other airplanes, the staircase here has one handrail instead of two.

kinds of liability. With federal preemption of the standard of care, both airlines and airplane manufacturers, on the one hand, and passengers, on the other, would have some manageable guidance regarding duties owed. Further, by allowing the states to determine the elements of breach,[7] causation,[8] and, most importantly, damages,[9] the *Abdullah* approach allows states to maintain individual policy priorities in line with Congress's intent to preserve state law remedies.

Accordingly, I would hold *Montalvo* requires us to remand this case to the district court to allow a factfinder to consider evidence to determine the *federal* standard of care for negligent stairway design, and *state* standards for breach, causation, and damages.

---

[7]Whether the failure properly to design is excusable under the circumstances.

[8]Whether the damages plaintiff claims may be offset totally or partially by the plaintiff's contributory or comparative fault.

[9]Whether damages caps should be imposed for particular non-economic claims and whether punitive damages should be allowed.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON REUTERS/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2009 Thomson Reuters/West.