[No. B232307. Second Dist., Div. Six. Mar. 20, 2012.]

SIERRA PACIFIC HOLDINGS, INC., Plaintiff and Appellant, v. COUNTY OF VENTURA, Defendant and Respondent.

## COUNSEL

Lloyd Kirschbaum for Plaintiff and Appellant.

McBreen & Senior and Peter J. McBreen for Defendant and Respondent.

## OPINION

**YEGAN, Acting P. J.**—Here we hold that Federal Aviation Administration (FAA) safety "standards" in an advisory circular do not preempt state tort law on the standard of care applicable to an airport's "runway protection zone" (RPZ). These nonmandatory federal standards are not FAA regulations and do not have the force and effect of law.

The County of Ventura (County) owns and operates Camarillo Airport. Sierra Pacific Holdings, Inc. (Sierra), sued County for allegedly creating a

dangerous condition at the airport that resulted in damage to Sierra's aircraft. Sierra appeals from the judgment in favor of County. It contends that the trial court erroneously concluded that state tort law on the standard of care is impliedly preempted by safety standards in an FAA advisory circular. We reverse.

*Factual and Procedural Background*

The runway at Camarillo Airport is 6,000 feet long. At the end of the runway, there is a 3,000-foot-long paved area. From the air, this paved area appears to be a continuation of the runway but, unlike the runway, it is marked with yellow chevrons. A manual published by the FAA states that yellow chevrons "are used to show pavement areas aligned with the runway that are unusable for landing, takeoff, and taxiing."

The FAA published advisory circular No. 150/5300-13, which contains its "standards and recommendations for airport design" (hereafter Advisory Circular). It is signed by Leonard E. Mudd, former Director of the Office of Airport Safety and Standards.[1] Pursuant to the Advisory Circular, the first 1,000 feet of the 3,000-foot-long paved area is in the "runway safety area" (RSA), which must be "free of objects." (Advisory Circular, ch. 3, § 305.a(4).) The RSA is "[a] defined surface surrounding the runway prepared or suitable for reducing the risk of damage to airplanes in the event of an undershoot, overshoot, or excursion from the runway." (*Id.*, ch. 1, § 2.) The remaining 2,000 feet of the paved area is in the runway protection zone (RPZ). The RPZ is "[a]n area off the runway end to enhance the protection of people and property on the ground." (*Ibid.*)

Approximately 100 feet after the end of the 1,000-foot-long RSA, County erected an 18-inch-high barrier across the paved area in the RPZ. Before the barrier was erected, someone had driven a vehicle from the paved area of the RPZ onto the runway. Sierra's expert witness declared: "Apparently, [County] had been leasing space beyond the . . . end of the runway to the California Highway Patrol, and other training vehicles, and the stated purpose of the barrier was to prevent those vehicles from inadvertently going onto the runway in what is commonly referred to as a 'runway incursion.'"

---

[1] The record on appeal includes only excerpts from chapter 3 of the Advisory Circular. Pursuant to Evidence Code sections 452, subdivision (b), and 459, we take judicial notice of the Advisory Circular in its entirety. The Advisory Circular is available on the Internet at the following address: <http://www.faa.gov/documentLibrary/media/Advisory_Circular/AC_150_5300_13_CHG17_consolidated.pdf> (as of Mar. 20, 2012).

In September 2008 the pilot of an aircraft owned by Sierra took off from Camarillo Airport. Shortly after takeoff, the aircraft lost power. The pilot made an emergency landing in the middle of the runway and was unable to stop before the runway ended. The aircraft continued through the 1,000-foot-long RSA, then entered the paved area of the RPZ, flew over the barrier there, landed, traveled to the end of the paved area, "entered a dirt field and flipped over."

In February 2009 Sierra filed a complaint for negligence against County. Sierra alleged that County's negligent erection of the barrier in the paved area of the RPZ was a proximate cause of damage to the aircraft: "[T]he pilot was required to avoid the [barrier], by releasing the brakes and hopping over it, and thereby lost vital time and stopping distance. Because of the maneuver required to avoid hitting the [barrier], the pilot was unable to stop the aircraft on the available pavement following the maneuver . . . , and [the] aircraft careened off the end of the pavement, where it overturned in the dirt field . . . and sustained substantial damage." Sierra claimed damages totaling $372,986.

County filed a motion in limine to preclude Sierra "from introducing evidence of safety standards relating to airport design and construction, other than the standards established by the federal government." County argued that, in the RPZ where the barrier had been erected, federal safety standards in the Advisory Circular preempted state tort law on the standard of care.

The trial court granted the motion in limine. It concluded "that the area where the physical obstruction was present on the ground . . . was governed by standards set forth by the FAA." County's counsel interjected: "For the record, your honor, the standards are found in [the Advisory Circular]."

Sierra announced that it was unable to proceed because its negligence action was based on a dangerous condition of public property under state tort law. (Gov. Code, § 835.) Sierra conceded that County had complied with all FAA regulations. The parties stipulated to the entry of judgment in County's favor "to expedite an appeal of the court's order granting" the motion in limine.

*Standard of Review*

Where, as here, " 'the issues regarding federal preemption involve undisputed facts, it is a question of law whether a federal statute or regulation preempts a state law claim and, on appeal, we independently review a trial

court's determination on that issue of preemption. [Citations.]' [Citation.]" (*Cellphone Termination Fee Cases* (2011) 193 Cal.App.4th 298, 311 [122 Cal.Rptr.3d 726].)

## *Discussion*

■ " 'The supremacy clause of the United States Constitution establishes a constitutional choice-of-law rule, makes federal law paramount, and vests Congress with the power to preempt state law.' [Citations.] Congress may exercise that power by enacting an express preemption provision, or courts may infer preemption under one or more of three implied preemption doctrines: conflict, obstacle, or field preemption. [Citation.]" (*Brown v. Mortensen* (2011) 51 Cal.4th 1052, 1059 [126 Cal.Rptr.3d 428, 253 P.3d 522].)[2]

■ The FAA was created by the Federal Aviation Act of 1958 (the Act; Pub.L. 85-726 (Aug. 23, 1958) 72 Stat. 731). (Codified as amended at 49 U.S.C. § 40101 et seq.) Congress has not enacted an express preemption provision for FAA safety standards.[3] Therefore, federal preemption of state law, if it exists, must be implied. "To establish implied preemption, evidence of Congressional intent to displace state authority is required. [Citation.]" (*Goodspeed Airport LLC v. East Haddam Inland Wetlands & Watercourses Com.* (2d Cir. 2011) 634 F.3d 206, 209–210; see also *Cipollone v. Liggett Group, Inc.* (1992) 505 U.S. 504, 516 [120 L.Ed.2d 407, 112 S.Ct. 2608] [" ' "[t]he purpose of Congress is the ultimate touchstone" ' of pre-emption analysis"].) " ' "[C]ourts are reluctant to infer preemption, and it is the burden of the party claiming that Congress intended to preempt state law to prove it." ' [Citations.]" (*Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc.* (2007) 41 Cal.4th 929, 936 [63 Cal.Rptr.3d 50, 162 P.3d 569].)

---

[2] The supremacy clause provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." (U.S. Const., art. VI, cl. 2.)

[3] The Airline Deregulation Act of 1978 (ADA; Pub.L. No. 95-504 (Oct. 24, 1978) 92 Stat. 1705), on the other hand, expressly prohibits the enactment or enforcement of a state "law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." (49 U.S.C. § 41713(b)(1).) "The purpose of the ADA is airline deregulation permitting more effective competition." (*Sakellaridis v. Polar Air Cargo, Inc.* (E.D.N.Y. 2000) 104 F.Supp.2d 160, 163.)

■ " 'Congress's implied intent to preempt is found . . . when it is clear that Congress intended, by comprehensive legislation, to occupy the entire field of regulation, leaving no room for the states to supplement federal law [citation] . . . .' " (*Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1087 [72 Cal.Rptr.3d 112, 175 P.3d 1170].) The Second, Third, Sixth, and Tenth Circuits of the federal Court of Appeals have, generally speaking, concluded that Congress intended to occupy the entire field of aviation safety. Therefore, pursuant to the reasoning of these circuits, state tort law on the standard of care in the field of aviation safety is impliedly preempted by FAA standards. (*Goodspeed Airport LLC v. East Haddam Inland Wetlands & Watercourses Com.*, *supra*, 634 F.3d at p. 210; *US Airways, Inc. v. O'Donnell* (10th Cir. 2010) 627 F.3d 1318, 1326–1329; *Greene v. B.F. Goodrich Avionics Systems, Inc.* (6th Cir. 2005) 409 F.3d 784, 795; *Abdullah v. American Airlines, Inc.* (3d Cir. 1999) 181 F.3d 363, 364–365.[4])

However, there is no preemption of state law remedies for violations of the standard of care established by the FAA: "While the Third Circuit held in *Abdullah* that 'federal law establishes the applicable standards of care in the field of air safety,' it also said, '[n]evertheless, we find that plaintiffs may recover damages under state and territorial remedial schemes.' [(*Abdullah v. American Airlines, Inc., supra*, 181 F.3d at p. 368.)] Thus, *Abdullah* holds that state law remedies or causes of action remain available, despite ordinary preemption of the standard of care." (*In re Air Crash at Lexington, Kentucky, August 27, 2006* (E.D.Ky. 2007) 486 F.Supp.2d 640, 648; see also the Act's general remedies savings clause, 49 U.S.C. § 40120(c) ["A remedy under this part is in addition to any other remedies provided by law."]; *Drake v. Laboratory Corp. of America Holdings* (2d Cir. 2006) 458 F.3d 48, 58 ["This 'saving' clause clearly indicates that the Act's remedies are not intended to be exclusive and that the Act therefore does not itself preempt Drake's claims for state-law remedies for violations of the FAA regulations."]; *Elsworth v. Beech Aircraft Corp.* (1984) 37 Cal.3d 540, 549 [208 Cal.Rptr. 874, 691 P.2d 630] ["Congress has clearly allowed state tort remedies" even though "federal law may have completely occupied the field of regulation of aircraft safety and certification"]; *id.*, at fn. 6 ["Congress has allowed a state damage action for violation of FAA regulations"].)

---

[4] The Third Circuit recently clarified that its "use of the term 'aviation safety' in *Abdullah* to describe the field preempted by federal law was . . . limited to in-air safety." (*Elassaad v. Independence Air, Inc.* (3d Cir. 2010) 613 F.3d 119, 126.) Thus, "[t]he supervision of the disembarkation process by a flight crew [after the plane has landed, taxied to the gate, and the stairs have been lowered] falls outside the bounds of what [the Third Circuit was] considering in *Abdullah*." (*Ibid.*, fn. omitted.) On the other hand, the field preempted by federal law includes "the takeoff and landing of an aircraft, and the 'piloting' that occurs during the flight." (*Id.*, at p. 130.)

The alleged dangerous condition here, the 18-inch-high barrier erected across the paved area in the RPZ, does concern aviation safety. In its complaint Sierra alleged: "The barrier . . . was improperly placed . . . [and] was not properly marked in such a manner as to give pilots executing an emergency landing on the runway at the airport a reasonable opportunity to know of its existence and properly plan to avoid impacting it, and therefore created an unreasonable risk of harm and unsafe flight condition at the Camarillo Municipal Airport." Since state tort law on the standard of care pertaining to the barrier implicates the field of aviation safety, it would arguably be preempted pursuant to the reasoning of the Second, Third, Sixth, and Tenth Circuits that Congress intended to occupy the entire field of aviation safety.

The Ninth Circuit took another approach in *Martin ex rel. Heckman v. Midwest Express Holdings, Inc.* (9th Cir. 2009) 555 F.3d 806 (*Martin*). There, the court "analyzed FAA preemption by looking to the pervasiveness of federal regulations in the specific area covered by the tort claim or state law at issue." (*Id.*, at p. 809.)

In *Martin* a pregnant woman fell from an airplane's stairs. She sued the airline and the airplane manufacturer, alleging that the stairs were defectively designed because they had only one handrail. The airline settled the lawsuit and filed a state law claim seeking indemnity from the manufacturer for negligent design of the stairs. The manufacturer argued that the Act pre-empted state tort law. The district court agreed and dismissed the airline's indemnity action. The court of appeals reversed. It concluded that FAA regulations preempt state law in an area, such as passenger warnings, "when the agency issues 'pervasive regulations' " in that area. (*Martin, supra,* 555 F.3d at p. 811.) "In areas without pervasive regulations or other grounds for preemption, the state standard of care remains applicable." (*Ibid.*) The FAA had not issued pervasive regulations in the area of an airplane's stairs: "Airstairs are not pervasively regulated; the only regulation on airstairs is that they can't be designed in a way that might block the emergency exits. . . . Because the agency has not comprehensively regulated airstairs, the FAA has not preempted state law claims that the stairs are defective." (*Id.*, at p. 812, citation omitted.)

Unlike "airstairs," the FAA has, at least, opined on safety concerns in the RPZ by promulgating the Advisory Circular. The Advisory Circular prohibits residences, fuel storage facilities, and "places of public assembly" such as "[c]hurches, schools, hospitals, office buildings, [and] shopping centers." (Advisory Circular, ch. 2, § 212.a(2)(b).) The Advisory Circular further

provides: "While it is desirable to clear all objects from the RPZ, some uses are permitted, provided they do not attract wildlife . . . , are outside of the Runway OFA [(Object Free Area)], and do not interfere with navigational aids. Automobile facilities, although discouraged, may be permitted, provided the parking facilities and any associated appurtenances . . . are located outside of the central portion of the RPZ." (*Id.*, § 212.a(2)(a).) For Camarillo Airport, the length of the "Object Free Area" is 1,000 feet beyond the end of the runway. Since the barrier was 1,100 feet beyond the end of the runway, it was not in the Object Free Area.

If the Advisory Circular's standards for the RPZ were incorporated in a mandatory FAA regulation, the standards arguably would preempt state tort law on the standard of care pursuant to the reasoning of *Martin.* But the Advisory Circular's standards are not incorporated in a mandatory regulation. The introduction to the Advisory Circular states: The FAA "recommends the guidelines and standards in this Advisory Circular for use in the design of civil airports. In general, use of this AC [(Advisory Circular)] is not mandatory. However, use of this AC is mandatory for all projects funded with federal grant monies through the Airport Improvement Program (AIP) and with revenue from the Passenger Facility Charges (PFC) Program . . . ." (Advisory Circular, introduction, § 3, underscoring omitted.) Thus, the standards in the Advisory Circular are mandatory only as to particular projects, and only if those projects are federally funded. The record is devoid of any evidence that a project in the RPZ at Camarillo Airport was federally funded. Therefore, the Advisory Circular's standards as to the RPZ are not mandatory.

The advisory nature of standards in the FAA's advisory circulars is confirmed by advisory circular No. 25-7A, issued on March 31, 1998, and cancelled on March 29, 2011.[5] The circular "provides updated guidance for the flight test evaluation of transport category airplanes." (Advisory circular No. 25-7A, § 1.) The circular states: "Like all AC [(advisory circular)] material, these guidelines are not mandatory and do not constitute regulations." (*Ibid.*)

The federal cases on preemption involve mandatory FAA regulations. We have not found any case holding that state law is preempted by nonmandatory standards in an FAA advisory circular. Such standards are not "law" and are not subject to the principle of preemption. That principle is based on the

[5] Pursuant to Evidence Code sections 452, subdivision (b), and 459, we take judicial notice of advisory circular No. 25-7A. The advisory circular is available on the Internet at <http://www.faa.gov/documentLibrary/media/Advisory_Circular/AC25-7A.pdf> (as of Mar. 20, 2012).

supremacy clause of the United States Constitution, which " 'makes federal law [(not advisory standards)] paramount, and vests Congress with the power to preempt state law.' [Citations.]" (*Brown v. Mortensen, supra,* 51 Cal.4th at p. 1059; see also *Sprint Spectrum L.P. v. Mills* (2d Cir. 2002) 283 F.3d 404, 414–415 ["The foundation of preemption doctrines is 'the Supremacy Clause, . . . [which] invalidates state laws that "interfere with, or are contrary to," federal law.' "].)

■ "The FAA regulations have the force and effect of law binding upon pilots, FAA personnel, and the operators of airports [citation] . . . ." (*Bethman v. City of Ukiah* (1989) 216 Cal.App.3d 1395, 1403–1404 [265 Cal.Rptr. 539]; see also *King v. National Transportation Safety Bd.* (8th Cir. 2004) 362 F.3d 439, 441 ["the FAA has authority to promulgate legislative rules that carry the force of law . . ."].) Such "[f]ederal regulations have no less pre-emptive effect than federal statutes." (*Fidelity Federal Sav. & Loan Assn. v. de la Cuesta* (1982) 458 U.S. 141, 153 [73 L.Ed.2d 664, 102 S.Ct. 3014].) On the other hand, as discussed above, the FAA's nonmandatory standards in the Advisory Circular are not regulations and do not have the force and effect of law. Because these standards are merely advisory guidelines, they cannot constitute paramount federal law that preempts state law. The trial court, therefore, erred in granting County's motion in limine to preclude Sierra from introducing evidence of safety standards for the RPZ other than the standards set forth in the Advisory Circular. ·

Our holding and the analysis which leads thereto is supported by *Fellner v. Tri-Union Seafoods, L.L.C.* (3d Cir. 2008) 539 F.3d 237. There, the defendant moved to dismiss a food poisoning lawsuit on the ground that it was "preempted by regulatory actions of the United States Food and Drug Administration ('FDA')." (*Id.,* at p. 241.) The plaintiff had consumed the defendant's tuna products, which allegedly contained excessive concentrations of mercury. The plaintiff sought recovery under a New Jersey act, "based on [the defendant's] failure to warn of the risks incurred in consuming its products." (*Ibid.,* fn. omitted.) The defendant argued that state law was preempted because it conflicted with (1) the FDA's (United States Food and Drug Administration's) advisory notice to consumers on the risks of mercury in fish, and (2) "the FDA's internal enforcement guideline suggesting mercury levels which might prompt FDA enforcement action." (*Id.,* at p. 252.) The appellate court rejected the preemption argument because "[t]he FDA has promulgated no pertinent legal standard pertaining either to the risks posed by mercury in fish or to warnings for that risk, and it has not otherwise acted on the issue in a manner that could be deemed an exclusive application of law." (*Id.,* at p. 251.) As to the FDA's consumer advisory notice, the court noted that it "simply give[s] non-binding advice to a class of consumers . . . ."

(*Id.*, at p. 252.) The court declared: "Although federal administrative law as well as Congressional enactments are the supreme law of the land, we must reiterate . . . that it is federal *law* which preempts contrary state law; nothing short of federal law can have that effect. The Supreme Court's longstanding interpretation of the Supremacy Clause, and indeed the Supremacy Clause itself, mandate this principle . . . ." (*Id.*, at p. 243.)

■ Although the FAA's advisory standards for the RPZ do not constitute federal law and thus cannot have a preemptive effect, they may still play an important role in litigation. This is illustrated by *Muncie Aviation Corp. v. Party Doll Fleet, Inc.* (5th Cir. 1975) 519 F.2d 1178. There, the plaintiff sued for damages to its aircraft caused by a collision with the defendant's aircraft. The plaintiff's complaint alleged "negligence by [the defendant's] pilot in failing to follow the standard landing traffic pattern procedures at an uncontrolled airport." (*Id.*, at p. 1180.) On appeal, the defendant contended that the trial court had erred "in permitting the plaintiff to introduce two advisory circulars promulgated by the F.A.A. containing recommended landing procedures for pilots approaching uncontrolled airports . . . ." (*Ibid.*) These "recommendations, though merely advisory and without the force or effect of law, were offered by the plaintiff as evidence of the standard of care customarily followed by pilots approaching uncontrolled airports." (*Ibid.*)

The appellate court concluded that the advisory circulars were admissible "to provide the jury with guidelines for determining what procedures were followed by pilots in the ordinary course of such landings [at uncontrolled airports] and to assist the jury in measuring ordinary negligence." (*Muncie Aviation Corp. v. Party Doll Fleet, Inc., supra*, 519 F.2d at p. 1180.) "To the extent the defendant's pilot failed . . . to follow the [advisory circulars'] recommendations, the jury could permissibly infer that he failed to meet the appropriate standard of due care." (*Id.*, at p. 1181.) The appellate court reasoned: "Evidence of custom within a particular industry, group, or organization is admissible as bearing on the standard of care in determining negligence. Compliance or noncompliance with such custom, though not conclusive on the issue of negligence, is one of the factors the trier of fact may consider in applying the standard of care. . . . [W]itnesses testified that the landing procedures recommended in the circulars were generally followed." (*Id.*, at pp. 1180–1181, fns. omitted.) The appellate court considered its decision to be "in accord with the modern trend of cases finding national safety codes representative of 'a consensus of opinion carrying the approval of a significant segment of an industry' and offerable as exemplifying safety practices prevailing in the industry." (*Id.*, at p. 1183, fn. omitted.)

## *Disposition*

The judgment is reversed. The trial court is directed to vacate its order granting County's motion in limine and to enter a new order denying the motion. Sierra shall recover its costs on appeal.

Coffee, J., and Perren, J., concurred.